LOUISA P. HOLMES *vs.* SAMUEL L. HOLMES.

*A decree of divorce, fraudulently obtained, annulled.*

The respondent in order to obtain a divorce from his wife, falsely alleged in his libel that his domicil was in Saco in York county, when he had no residence within the State; and that his wife's residence was unknown to him, when he knew where she was. He thus got an order of notice in a newspaper with a design of concealing from her any actual notice of the proceeding, and obtained a divorce without any knowledge on her part. *Held,* that for such a fraud imposed upon the court, the decree of divorce can be set aside upon the petition of the party injured by the fraud, although the respondent has contracted a new marriage since the first was dissolved, and before any proceedings were commenced to set the decree aside.

ON EXCEPTIONS.

This was a petition to have a decree of divorce between these parties, procured in this court in York county, in 1871, upon the husband's libel, set aside for fraud. The facts upon which this

petition is based are stated in the opinion. The prayer of the petition was granted at *nisi prius* and the respondent excepted.

*Clifford & Clifford*, for the respondent.

Cases cited from other States do not affect proceedings in this State, where the whole matter is regulated by statute.

R. S., c. 60, § 9, expressly provides for a new trial where no new marriage has been contracted by either party; thus, by clear implication, prohibiting it where new marital relations have arisen. *Edson* v. *Edson*, 108 Mass., 590, and *Adams* v. *Adams*, 51 N. H., 388, upon which the petitioner relies, are to the effect that a new trial may be granted under conditions, under which our statute prohibits any new trial.

The jurisdiction of this court is purely statutory. It derives no aid from the common law. Therefore, the statute must be strictly pursued.

Here was a judgment, founded upon a record containing all the necessary jurisdictional facts; can it be impeached by petition, and reversed for causes which would not avoid it upon writ of error? The libellee was a non-resident. Notice by publication was proper. *Non constat*, that this order was granted solely by reason of the statement of the libellant's ignorance of the residence of the libellee. The statute did not then require such a statement to justify a resort to published notice.

*Goodwin & Lunt*, for the petitioner, cited *Edson* v. *Edson*, 108 Mass., 590; *Adams* v. *Adams*, 51 N. H., 388; and argued that it would be grossly unjust toward the petitioner to allow her to be deprived of rights of the highest importance, without an opportunity to be heard, and by fraud, which vitiates everything— even judgment.

PETERS, J. The evidence in this case shows: That neither the libellant nor libellee ever had a residence within the county of York since their intermarriage in 1849; that neither of them had a residence in this State, at the time the divorce was petition-

ed for by him or when it was decreed; that the libellee had been living in Wisconsin since 1865; that during all the time she was there the libellant knew precisely where she was; that in order to obtain a divorce from her without notice or knowledge on her part, he falsely pretended in his petition for divorce, that his own residence was in Saco, in York county, and that his wife was in some place to him unknown; that the object of selecting York county in which to prosecute a divorce was, to procure an order of notice on his libel in a newspaper of limited circulation that would not be seen by her or her friends; that, in 1871, he obtained a divorce without any actual notice to her, and without any suspicion by her that any proceedings for a divorce were to be had. It is, therefore, clear that the court had only an apparent and not a rightful jurisdiction in the premises, and that that jurisdiction was obtained in York county by the fraud and deceit of the libellant. A gross imposition was also practiced by him upon the court, in his allegation of ignorance as to the whereabouts of his wife. He therefore got a decree of divorce without actual notice to her, when actual notice of some kind would undoubtedly have been ordered by the court, had her place of residence been disclosed. For these causes the petitioner moves the court that the decree of divorce be set aside.

Nothing is more clearly settled than that the court has the right and power so to do. It is hardly probable that such a proposition would be seriously questioned in a case not fraught with momentous consequences to the parties concerned, as this case is. Lord Coke said, "fraud avoids all judicial acts, ecclesiastical or temporal." In Freeman on Judgments, a reliable authority, it is said, that "the denial of the power of the courts to set aside their judgment has probably been made in no State but California. Here the power to vacate a judgment is exhausted at the close of the term." It is not stated, whether this is a matter regulated in that State by statute or not. The author further says, "this power has been fully recognized and liberally employed in England and in the United States, both at law and in equity." It is

Holmes *v.* Holmes.

not necessary to cite numerous authorities in support of our view of this question. The same question has lately been exhaustively discussed by the courts in Massachusetts and New Hampshire, in whose opinions upon this subject we fully agree. *Adams* v. *Adams*, 51 N. H., 388; *Edson* v. *Edson*, 108 Mass., 590. The same doctrine is strongly advocated and applied in *Allen* v. *Maclellan*, 12 Penn. St. R., 328. There is very little, if any, weight of authority the other way.

The respondent has much to say, in argument, about the inviolability of judgments. This would very well apply to judgments that are properly, and not to those that are surreptitiously, obtained. He urges that all the forms have been right. But what is there inviolable about a judgment obtained by an abuse of the forms of court and the perpetration of an imposition on the court itself? It is regarded as reprehensible for a party to take a judgment, when he knows that a defendant has not had any notice to be present and heard. A judgment got without notice to a party defendant, may upon proper motion and notice be set aside. *Penobscot R. R. Co.*, v. *Weeks*, 52 Maine, 456. But what essential difference is there between a judgment obtained upon a notice designedly and fraudulently so given as to prevent actual notice to a defendant, and a judgment where there was no notice at all? Shall fraud be skilful enough to impose a sham upon a court of justice, to the injury of innocent parties, without any adequate remedy or reparation therefor? We are not willing to concede it.

But it is argued, that the power of the court to vacate the decree of divorce is terminated, because the libellant, before this motion was made, contracted a new marriage. That would furnish a reason why the court should exercise the power and discretion belonging to them in such a case with more carefulness and caution perhaps; but the authority and right to act is the same after a new marriage as before. In the Pennsylvania case, referred to, Gibson, C. J., says: "It may seem an arbitrary act to expunge a sentence of divorce with a stroke of a pen, bastardize after begot-

ten children, involve an innocent third person in legal guilt, and destroy rights acquired in reliance on a judicial act, which was operative at the time. But the legitimate husband also has rights; and if any one must suffer from the invalid marriage, it is he who procured it." In this case the second wife is no more placed *in extremis* than is any woman, who innocently marries an already married man. Her misfortune is imputable to nothing but the guilt of her husband, or perhaps to a carelessness of her own. On the other hand, if a decree fraudulently obtained cannot be vacated, then the court can be used by a reckless man as an instrumentality to deprive an innocent wife of a support from her husband, of the right to dower in his estate, of the possession of her children, besides stamping her name, it may be, with an unmerited disgrace. Such a retribution should not fall upon her at least.

The respondent further contends, that this proceeding amounts to a new trial of the divorce case, and that it cannot be entertained, because the statute prohibits a new trial as to the divorce, when either of the parties. has contracted a new marriage since the former trial was had. But this position cannot be sustained. A new trial is not asked for. If this motion prevails, none can be had. It cuts deeper than that. It seeks to nullify a previous proceeding. To use the forcible phrase of the respondent's counsel, "it wipes out a record." It proceeds upon the ground that no trial has been had; and that the record of the trial is no better than it would be, if there had been no notice or order of notice to the libellee. It is not a motion to review or reverse, but to vacate a judgment, on account of a fraud practiced upon the court, injurious to a party who has not been heard. It is not pretended that, under this motion, an error of the court could be corrected, or that there could be any remedy for false testimony given at the trial on the merits of the cause. But the court can determine that an apparent and not a real jurisdiction was obtained by fraud, and that a decree made without legal notice in pursuance of it shall be null and void.

Our only hesitation has been, whether it would be politic and

prudent to exercise the discretion of the court to annul the decree in this case, without complete proof that all the material allegations contained in the original libel were false. Evidence was offered by the petitioner for that purpose. So far as it was excluded, it was at the respondent's request. He offered no evidence upon that point himself. Nor was he present at the hearing. The principal allegations in the libel were desertion and ill treatment of the husband and sons. Testimony bearing on these points was necessarily introduced, to make out the petition in other respects. We think these allegations are abundantly disproved. We feel compelled, upon the facts before us, to believe that the demands of justice require that the decree of divorce be annulled.

*Exceptions overruled.*

*The decree of divorce annulled.*

APPLETON, C. J., WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.