RUTH ESTHER JOHNSON, Plaintiff, *v.* STEPHEN W. JOHNSON, Defendant.

Supreme Court, Schenectady County, January 6, 1933.

*Blodgett & Smith,* for the plaintiff.

*Borst & Smith,* for the defendant.

HEFFERNAN, J.   This is an action by a wife against her husband for a judicial separation on the ground of abandonment, without

cause or provocation, and also to obtain a decree permanently and perpetually restraining and enjoining defendant from instituting or prosecuting a suit for divorce against plaintiff in the courts of Nevada or in the courts of any foreign State.

Plaintiff is now applying for a temporary injunction order restraining defendant, *pendente lite*, from instituting legal proceedings, involving the matrimonial status, against her in any other jurisdiction.

The papers presented on this application disclose that the parties were married on July 14, 1922, at Rapid City, S. D. Since February, 1923, they have been residents of the city of Schenectady, N. Y. Two children, aged nine and five years, respectively, are the issue of the marriage. The children reside with the mother. Defendant is contributing to their support. Without any justification whatever defendant abandoned plaintiff in May, 1931. He has since continuously absented himself from the marital residence and concedes that he does not intend to return. The complaint charges the abandonment and also alleges that defendant has threatened to, and is about to go to the State of Nevada, or to some foreign jurisdiction, there to establish a fictitious residence in bad faith and obtain a decree of absolute divorce against the plaintiff upon grounds not recognized in this State. Although defendant has appeared in the action he has not answered and has made no denial of these allegations.

It is not disputed that plaintiff's conduct during her married life has been such that defendant is not entitled to a judgment of divorce or separation against her on any ground recognized by the laws of this State. There is no claim made by defendant that he is entitled to divorce his wife upon the usual grounds in foreign jurisdictions, such as desertion, abandonment, drunkenness, cruel and inhuman treatment, mental cruelty or conduct rendering it unsafe for him to longer cohabit with her.

On a number of occasions defendant has unsuccessfully endeavored to induce plaintiff to obtain a decree of absolute divorce against him although he has offered to provide her with means for that purpose. On February 25, 1932, he wrote her a letter urging her to secure a divorce in which he said, *inter alia:* " If you still refuse I am going to try to get one [divorce] myself. I realize that I could not get one in New York State but there are States where I can go to live where I think I could get one. This, however, will work considerable hardship on all of us."

Plaintiff having declined to acquiesce in his suggestion for a dissolution of the marriage, defendant admits that it is his purpose to establish a fictitious residence in the State of Nevada or in

some other foreign jurisdiction where the marriage bond may be conveniently dissolved against plaintiff upon grounds not recognized by, and which could not be valid according to our laws. Undoubtedly plaintiff by employing counsel and appearing in the foreign court could defeat defendant's attempt to obtain a decree against her. To resist such an attack upon her marriage she would be required to appear and make her defense in some remote foreign forum chosen by defendant. This course would also necessitate the expenditure of considerable money and plaintiff pleads that she is penniless, in delicate health and incumbered by two small children.

Counsel for defendant contend that the court is powerless to protect plaintiff by injunction against defendant's threatened wrong, on the theory that she is not damaged financially. That argument is readily refuted. Defendant is attempting to annul plaintiff's status as his wife and thereby invade her personal rights. There are other things in life beside mere money damages. Not every element of wrong can be estimated and ascertained in dollars and cents. Because the pecuniary injuries which plaintiff may sustain, if defendant should accomplish his purpose, cannot be measured with mathematical accuracy, is no reason for holding that she is outside the pale of the court's protection.

In our State adultery is the only ground which works a dissolution of the marriage bond. It is the public policy of this State to refuse to recognize as binding a decree of divorce obtained in a court of a sister State, not the matrimonial domicile, upon grounds insufficient for that purpose in this State, when the divorced defendant resides in this State and was not personally served with process and did not appear in the action. (*Winston* v. *Winston*, 165 N. Y. 553; *Olmsted* v. *Olmsted*, 190 id. 458; affd., 216 U. S. 386.) It is settled that such policy is not hostile to the full faith and credit clause of the Federal Constitution (Art. 4, § 1). (*Haddock* v. *Haddock*, 201 U. S. 562.)

There cannot be the slightest doubt that a court of equity upon a proper case being shown has authority to restrain persons within its jurisdiction from proceeding in suits in the courts of other States. (32 C. J. 115; 14 R. C. L. 412; *Greenberg* v. *Greenberg*, 218 App. Div. 104.) It is the general rule that where a party is within the jurisdiction of the court, he may, on a proper showing, be enjoined from prosecuting an action in a court of another State. The question, however, as to when this jurisdiction may be exercised is often one of great delicacy, owing to the fact that it may frequently lead to a conflict of jurisdiction. Hence the power is used sparingly, and the applicant must show good equitable grounds or the injunction will not issue. The jurisdiction rests on the

authority vested in courts of equity over persons within the limits of their own jurisdiction to restrain them from doing inequitable acts to the wrong and injury of others, and on the power of the State to compel its own citizens to respect its laws even beyond its own territorial limits. (14 R. C. L. 412, 413.) All that is necessary to sustain jurisdiction is that plaintiff should show a clear equity and that defendant is subject to the authority and within the reach of the process of the court, and this requirement is satisfied when it is shown that the institution of the suit in another State is for the purpose of securing to the plaintiff some unfair, unconscionable or inequitable advantage, or that the prosecution thereof will result in fraud, gross wrong or oppression, and that the prosecution of the suit in another State is against equity and good conscience, or that the suit is against the public policy of the State in whose court the injunction is sought. (32 C. J. 116, 117.) The most frequent ground for granting an injunction of this character is to prevent a citizen of one State from prosecuting an action against another citizen of the same State in a foreign jurisdiction for the purpose of avoiding the laws of his own State. (32 C. J. 117.)

Plaintiff's position makes a responsive appeal to the conscience and the discretion of the court. She is entitled to the fullest measure of protection against defendant's proposed act. For no apparent reason, except the gratification of his own desires, he is seeking to discard a wife who has done no wrong. He should not be permitted to consummate his scheme of evasion of the laws of his own State and place his aggrieved wife in a situation where she must defend herself against a judgment fraudulently obtained. The fact that plaintiff has a legal defense available in the court in which the contemplated action is brought is no answer to this application and does not affect her right to an injunction. (32 C. J. 118.) As a wife she has rights other than mere property rights which can be enforced in a court of equity. I realize that courts should not seek to regulate the morals of their citizens by injunction; neither should they hesitate to protect a wife and mother in her status as such before the public. As was well said by Mr. Justice DOWLING in *Greenberg* v. *Greenberg* (*supra*): " Furthermore, the mere fact that a husband has secured a divorce from his wife gives ground for suspicion at least of the virtue and fidelity of the latter, on the part of the general public, in the domicile of both parties, who are unacquainted with the infinite variety of causes for which divorces may be granted in other jurisdictions and have heard only of the usual statutory ground for divorce in this State. A wife who has ·given no ground for divorce in this State where she and her husband

have always lived during their married life, should not be exposed to the humiliation and doubt as to her status raised by a judgment of divorce in another State, even if fraudulently obtained and invalid here."

Then too while a decree of divorce obtained in a foreign jurisdiction would be void here it would be valid there. Defendant might legally remarry there and flaunt the second wife in the face of the plaintiff and her children. To permit such a contingency is intolerable, violative alike of the principles of morality and the public policy of our State. The court should not hesitate to assert its power in order to protect a wife whose rights are sought to be destroyed.

The application for a temporary injunction order is, therefore, granted.