Sallie R. Kahn, Appellee, v. Arthur S. Kahn, Appellant.

Gen. No. 43,317.

Heard in the
second division of this court for the first district. Interlocutory order
entered November 18, 1944, Opinion filed February 13, 1945.
Released for publication March 5, 1945.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND,
of Chicago, for appellant; FLOYD E. THOMPSON, FRED-
ERICK MAYER and ADOLF LOEB, all of Chicago, of coun-
sel.

BENJAMIN B. DAVIS, of Chicago, for appellee; HARRY
J. LURIE, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the
court.

Defendant appeals from an interlocutory order en-
tered November 18, 1944, denying his motion to dis-
solve a temporary injunction, which restrained de-
fendant from in any way, manner or form instituting
or filing a complaint, petition or proceeding for a di-
vorce or other domestic or matrimonial relief against

plaintiff in any court of the State of Nevada or of any other state or country other than the State of Illinois, until the further order of the court. The temporary injunction was entered by Judge SABATH on October 3, 1944, the cause was assigned to Judge LINDSAY on October 6, 1944, and on the latter date the motions of defendant to dissolve the injunction and to dismiss the complaint were filed.

Plaintiff's verified complaint prayed that she be awarded a decree for separate maintenance; that she be awarded the care, custody, control and education of the minor children of the parties; that during the pendency of the cause and permanently thereafter defendant be ordered to contribute toward the maintenance of plaintiff and the minor children; that the writ of injunction issue without notice and without bond, enjoining and restraining defendant from in any way, manner or form instituting or filing a complaint, petition or proceeding for a divorce or other domestic or matrimonial relief against plaintiff in any court of the State of Nevada, or of any other state or country other than the State of Illinois, until the further order of the court.

The complaint, filed October 3, 1944, alleges that the parties have been actual residents of Chicago for many years last past; that they were married November 24, 1927, and lived together until October 2, 1944; that two children, Arthur S. Kahn, Jr., and Betty Kahn, both minors, were legally adopted by the parties, that they are in the care and custody of plaintiff and that she is a fit and proper person and entitled to retain their care and custody; that defendant, without any reasonable cause, wilfully deserted plaintiff on October 2, 1944, and has since persisted in said desertion; that since that date she has lived separate and apart from defendant without any fault on her part; that prior to April 1, 1944, the parties were engaged in an enterprise known as the "Sally Chain

Stores," which business was an outgrowth of a prior business organized and developed by plaintiff; that said stores were operated in many cities in the country; that the parties, on April 1, 1944, sold said enterprise and received a substantial consideration from said sale; that on April 16, 1944, defendant informed plaintiff that he desired a divorce; that she was surprised, shocked and terribly distressed at the announcement and reminded defendant that there was no reason whatsoever justifying his demand for a divorce, and she pleaded with him to reconsider his decision; that from time to time thereafter he repeated his demands for a divorce and advised plaintiff that he was determined to go to Nevada and obtain a divorce in that state, that although he had no cause to obtain a divorce in Illinois he was advised that he could establish a six weeks' residence in Nevada and could obtain a divorce there without the assistance of plaintiff and regardless of any opposition she might present; that said threats have caused plaintiff great distress, misery and unhappiness, and although she has repeatedly pleaded with defendant to reconsider his position and refrain from such action, he has informed her that he is determined to carry through his plans; that defendant, in furtherance of his plans, on September 5, 1944, and on several occasions since, removed his clothes from the apartment in which the parties were living at the Shoreland Hotel, Chicago, and on October 2, 1944, he removed from the apartment, at the same time warning plaintiff that he was on his way to Nevada for the purpose of obtaining a divorce; that since October 2, 1944, only plaintiff and her children have been occupying the said apartment; that defendant plans to go to Nevada and establish there a fictitious and colorable residence for the purpose of fraudulently obtaining a divorce, because of the fact that he is unable to obtain a divorce in the State of Illinois under any existing statute; that he

has been advised and believes that the courts of Nevada are disposed to grant divorces to applicants regardless of the merits of the particular case or the validity of the defense interposed; that defendant is an actual and *bona fide* resident and citizen of the State of Illinois and has been such resident for many years; that if he is permitted to institute an action for divorce in another state such attempt will be in furtherance of his plans to evade the statutes of the State of Illinois and in defiance of the laws and public policy of this state; that such action will be a fraud upon plaintiff and she will be compelled to go to great expense, inconvenience and effort in defending such litigation; that she will be compelled to travel and transport witnesses across the country and in various ways will be burdened with great physical and financial hardships; that she would be compelled to defend such action in the courts of a state whose announced and invariable policy is to grant and not refuse divorces; that if said defendant is permitted to carry through his plans and intentions irreparable harm and injury will be done plaintiff; that a writ of injunction should issue out of this court restraining such action and that notice to defendant of the application for said injunction should be waived in order to make effective said injunction; that if notice is given, defendant will be enabled to evade service of said injunction upon him; that said injunction should also issue without bond; that defendant is a man of great wealth; that he is well able to contribute toward the support of plaintiff and the minor children of the parties hereto in a fashion consistent with their station in life, and to pay the expense of this litigation.

In the verified answer of defendant, filed October 7, 1944, he admits that the parties are now and for many years last past have been actual residents of Chicago; that they were married as alleged by plaintiff, "but he denies that plaintiff has lived with him as his wife

from the time of their marriage until October 2, 1944.'' He denies that he deserted plaintiff without reasonable cause and that he is living apart from her without fault on her part, and avers that for over seven or eight years plaintiff has repeatedly threatened to leave him, has violently abused him, has subjected him to gross indignities, and has designedly made living with her unbearable with the purpose of driving him from his home; that he has suffered said indignities and ill treatment for the sake of their children and that he left the home only when conditions reached the point where his health was being undermined and plaintiff's violent treatment of him was making life unhappy and disagreeable for their children. He denies that the divorce between the parties was first discussed after the sale of Sally Chain Stores and he avers that more than four years ago plaintiff demanded that he consult a lawyer and arrange for their divorce, and that she repeated this demand many times thereafter. He denies that plaintiff was surprised when he recently told her that he could not bear living with her any longer, and denies that she pleaded with him to reconsider his decision. He ''denies that his announcement to plaintiff of his conclusion that divorce seemed to be the only solution of their problem has caused plaintiff any misery and unhappiness except that she sees an end to her opportunity to abuse and harass him and she will be denied the satisfaction of making his life miserable and impairing his health. He admits that he left the family apartment at the Shoreland Hotel October 2, 1944, and he avers that he moved to quarters at the Standard Club in Chicago. He denies that plaintiff occupied the apartment at the Shoreland Hotel with their children between October 2, 1944, the date he left the apartment, and October 3, 1944, the date the complaint was filed, and he avers that said children were in Lake Forest, Illinois, at school as aforesaid. He denies that he plans to establish a fictitious resi-

dence at any place for any purpose, and he avers that if he does change his residence from Chicago, Illinois, it will be a genuine and legal change of residence for a proper and lawful purpose. He denies that plaintiff has any right to restrain him by injunctive process or otherwise from freedom of action which is within his legal rights. He admits that he is a man of substantial means and that he is well able to support his children, and he avers that he is supporting them and will continue to do so as long as he and they live and they require his care. He avers that plaintiff's wealth exceeds his by not less than $250,000 and that plaintiff for many years has had and now has an annual income in excess of $30,000 and that she is well able to take care of herself and to pay her own expenses of litigation.''

On October 27, 1944, plaintiff filed a reply to defendant's answer in which she denies that the children are in the care and custody of defendant or that he is a fit and proper person to have the care and custody of them. She admits that the children are attending schools at Lake Forest, Illinois, but avers that their home is the apartment of plaintiff in the Shoreland Hotel. She denies that for the past seven or eight years she has threatened to leave defendant or that she violently abused him or subjected him to gross indignities, or that she has ever designedly made living with her unbearable with the purpose of driving defendant from his home or for any other reason. She avers that defendant left the home, plaintiff and their children without any reason, cause or provocation on the part of plaintiff, and solely in furtherance of his plan of attempting to obtain a false and fraudulent divorce from her. She denies that four years ago or at any other time she demanded that defendant consult a lawyer and arrange for a divorce and avers that the first time a divorce was discussed between them was after the sale of the Sally Chain Stores, in April, 1944. She avers that she was surprised when defend-

ant told her that he would not live with her any longer, and that he insisted upon a divorce; that she has never given defendant any reason or cause to want a divorce, "and that the possibility of a termination to many years of marriage with the defendant, caused her great distress." She avers that the two children lived in the home at the Shoreland Hotel "at such times as they were away from school." She denies that if defendant changes his residence from Chicago, Illinois, it will be a genuine and legal change of residence for a proper and lawful purpose, and avers that if he changes his residence it will be only for the purpose of establishing a fictitious residence elsewhere, in furtherance of his unlawful and improper purpose of evading the laws of Illinois, and of obtaining a fraudulent divorce from plaintiff. She admits that prior to the separation defendant did contribute from his income a fair proportion toward the maintenance of the family home and the children, but that since his desertion of plaintiff, although able, he has refused partly so to do. She believes that defendant is possessed of assets upward of $750,000. She admits that she has an income but states the fact to be that defendant's income is greatly in excess of her own.

Defendant contends: "The complaint does not state a cause of action for injunctive relief. A. Equity will not enjoin a mere threat to sue in a foreign State. This is particularly true if the suit could not be legally prosecuted in the foreign jurisdiction. B. A threatened act, to be enjoined, must not be imaginary or trivial but must be one which would cause the plaintiff irreparable injury. An injunction is never granted to correct social evils. C. A person who is *sui juris* has a natural right to change his domicile and to use the courts of his new domicile for any lawful purpose. Equity will not enjoin the free exercise of this right." Two other grounds for reversal are urged by defendant, but his counsel state in his brief and upon the oral

argument that "the first ground urged is the important ground, not only to this defendant but to the public, and it should be decided." Both parties agree that there is no case in this state that presents the exact question now before the court. Defendant's theory is, "that equity is without jurisdiction to restrain a mere threat to institute a suit for divorce in another jurisdiction at some uncertain time in the future. He contends that he has an absolute right to change his residence and to invoke the jurisdiction of the courts of his new domicile. He contends that if he institutes a divorce proceeding in a court that is without jurisdiction, such action would be void and could not injure plaintiff." Plaintiff states her theory as follows: "That a court of equity has, and freely exercises, the power to maintain a *status quo,* through the instrumentality of an interlocutory injunction, in a separate maintenance suit, *until the court determines the separate maintenance issue* and that the court should unhesitatingly grant that relief to prevent interference with its jurisdiction to determine that issue in a case where the purpose and threat of the defendant, undenied in the record, is immediately to establish a domicile in a foreign jurisdiction for the purpose of obtaining a divorce, to which he knows he is not entitled under the laws of Illinois." Her counsel approves the statement made by counsel for defendant that the right of plaintiff to a temporary restraining order like the instant one is the important issue upon this appeal.

█ At the outset, it is necessary to note that the injunction does not prevent defendant from changing his domicile and that plaintiff in her complaint seeks a decree for separate maintenance and the custody and support of the two minor children, and that the injunctive relief sought is merely ancillary to the main purposes of the complaint.

█ If plaintiff, in her complaint, had alleged, *inter alia,* that her husband had commenced divorce pro-

ceedings against her in Nevada, the law is settled that she would then have the right to a temporary injunction to prevent defendant from further prosecuting the Nevada proceeding, defendant being a citizen of this state and within it, and subject to the jurisdiction of the court in the instant proceedings, that concerns the marital relations of the parties. To cite certain of the cases that sustain this statement of the law: *Miller v. Miller,* 66 N. J. Eq. 436; *Huettinger v. Huettinger* (N. J. Ch.), 43 A. 574; *Streitwolf v. Streitwolf,* 58 N. J. Eq. 563; *von Bernuth v. von Bernuth,* 76 N. J. Eq. 177; *Selkowitz v. Selkowitz,* 40 N. Y. S. 2d 9; *Ashkenaz v. Ashkenaz,* 41 N. Y. S. 2d 388; *Usen v. Usen,* 13 A. 2d 738; *Borda v. Borda,* 44 R. I. 337; *Gwathmey v. Gwathmey,* 190 N. Y. S. 199, affirmed, 193 N. Y. S. 935; *Jeffe v. Jeffe,* 4 N. Y. S. 2d 628; 32 C. J. 118; *Gross v. Gross,* 180 A. 204; *Knapp v. Knapp,* 173 A. 343. Defendant states: "It is not defendant's position that equity at no time has the power to enjoin the prosecution of a foreign suit . . . It is defendant's position, however, that equity is without power to enjoin the carrying out of a mere threat to commence a suit at some future time in some state other than that of defendant's present residence, and that the prosecution of a suit already commenced will not be enjoined unless the prosecution of such suit would cause irreparable injury to plaintiff."

It might be well, at the outset, to state the general rule of law of this state as to when a court has the right to restrain a person over whom the court has jurisdiction from bringing a suit in a foreign state. In *Royal League v. Kavanagh,* 233 Ill. 175, the proceeding did not involve a divorce or separate maintenance action, but the general principles stated by the court are helpful. The court states (p. 183):

"There is no question as to the right to restrain a person over whom the court has jurisdiction from

bringing a suit in a foreign State. (*Harris v. Pullman,* 84 Ill. 20.) The courts do not; in such cases, pretend to direct or control the foreign court but the decree acts solely upon the party. The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to stay acts contrary to equity and good conscience. The State has power to compel its own citizens to respect its laws even beyond its own territorial limits, and the power of the courts is undoubted to restrain one citizen from prosecuting in the courts of a foreign State an action against another which will result in a fraud or gross wrong or oppression. (*Snook v. Snetzer,* 25 Ohio St. 516; *Keyser v. Rice,* 47 Md. 203; *Teager v. Landsley,* 69 Iowa, 725; *Wilson v. Joseph,* 107 Ind. 490; *Dehon v. Foster,* 4 Allen, 545.) But the court will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties. (*Carson v. Dunham,* 149 Mass. 52.) It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief. *Thorndike v. Thorndike,* 142 Ill. 450.''

Defendant contends that the only Appellate Court decision that passes upon the instant question is *De-Raay v. DeRaay,* 255 App. Div. 544, 8 N. Y. S. 2d 361, filed December 23, 1938. In that case the suit was

instituted for the sole purpose of restraining the defendant from prosecuting any suit for divorce against the plaintiff in a foreign jurisdiction, and the complaint contained no prayer for any other relief. The court states the facts in the case as follows (p. 362):

"The parties were married in New York, September 3, 1929, and have remained residents of this State. There is an infant daughter, issue of the marriage. On March 26, 1936, the defendant is alleged to have wrongfully deserted the plaintiff. On July 17, 1936, the parties entered into a separation agreement providing for the custody of the child and for the payment of $87.50 per week to the plaintiff 'so long as she shall remain alive or until she remarries.' Summarized, the gravamen of the complaint is as follows: At numerous times the defendant sought to induce and coerce the plaintiff into bringing an action against him for divorce and, if she refused, he threatened to leave the state and to establish a domicile in a foreign state. Defendant also threatened to breach the separation agreement. Defendant further stated that he had established a domicile and residence within the state of New Jersey on advice of counsel and that he intended to bring a suit in the courts of the state of New Jersey against the plaintiff for absolute divorce, and that, if he were unable to establish the existence of a bona fide residence in the state of New Jersey so as to maintain a suit, he would go elsewhere and pretend to establish a residence and domicile, so that he might there bring an action for divorce. The conclusion is that the threats establish that the defendant is about to perpetrate a fraud upon the courts of this State and courts of foreign jurisdiction for the purposes of carrying out his nefarious scheme to rid himself of the plaintiff and marry his paramour. It is then alleged that all the persons competent to testify as to knowledge concerning the facts reside within the State of New York and that the threatened acts would impede,

impair, prejudice and destroy the rights of the plaintiff in her marital status as well as in her property and contractual rights, and subject her to great expense to defend such threatened suit."

The court concludes (p. 363):

"From the complaint here, it appears that the defendant has so far done nothing but talk and has taken no steps which in any way affect plaintiff's property rights. If he had actually instituted an action in some jurisdiction, there might be justification for equitable interference. Until some affirmative act is taken, the court should not interfere to grant the relief asked. Even in the case of *Greenberg v. Greenberg,* 218 App. Div. 104, 218 N. Y. S. 87, assuming that the decision in that case was not overruled by *Baumann v. Baumann, supra* [250 N. Y. 382, 165 N. E. 819], the defendant had actually instituted an action in Mexico for a divorce. We find no precedent for equitable interference to prevent mere threats from possibly ripening into action."

Plaintiff contends that the *DeRaay* case is not an authority that bears upon the question before us for the reason that the sole purpose of the complaint in the *DeRaay* case was to obtain an injunction; that the injunction sought by plaintiff is merely ancillary to a suit for separate maintenance in which the custody and support of children is also involved, and that the Illinois court has jurisdiction of the subject matter and the parties.

In *Johnson v. Johnson,* 261 N. Y. S. 523 (a *nisi prius* decision), the wife started an action against her husband for a judicial separation on the grounds of abandonment, without cause or provocation, and also to obtain a decree permanently and perpetually restraining and enjoining defendant from instituting or prosecuting a divorce against her in the courts of Nevada or in the courts of any foreign state. To quote from the opinion of the court (p. 525): "The complaint

charges the abandonment and also alleges that defendant has threatened to, and is about to go to the state of Nevada, or to some foreign jurisdiction, there to establish a fictitious residence in bad faith and obtain a decree of absolute divorce against the plaintiff upon grounds not recognized in this state.'' The plaintiff applied to the court for a temporary injunction order restraining defendant *pendente lite* from instituting legal proceedings, involving the matrimonial status, against her in any other jurisdiction. The complaint in that case alleges facts very similar to those alleged in the instant complaint. To further quote from the opinion of the court (pp. 526, 527, 528):

''Counsel for defendant contend that the court is powerless to protect plaintiff by injunction against defendant's threatened wrong, on the theory that she is not damaged financially. That argument is readily refuted. Defendant is attempting to annul plaintiff's status as his wife and thereby invade her personal rights. There are other things in life beside mere money damages. Not every element of wrong can be estimated and ascertained in dollars and cents. Because the pecuniary injuries which plaintiff may sustain, if defendant should accomplish his purpose, cannot be measured with mathematical accuracy is no reason for holding that she is outside the pale of the court's protection.

''In our state adultery is the only ground which works a dissolution of the marriage bond. It is the public policy of this state to refuse to recognize as binding a decree of divorce obtained in a court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in this state, when the divorced defendant resides in this state and was not personally served with process and did not appear in the action. [Citing cases.]

''There cannot be the slightest doubt that a court of equity upon a proper case being shown has authority to restrain persons within its jurisdiction from pro-

ceeding in suits in the courts of other states. 32 C. J. 115; 14 R. C. L. 412; *Greenberg v. Greenberg,* 218 App. Div. 104, 115, 218 N. Y. S. 87, 97. It is the general rule that, where a party is within the jurisdiction of the court, he may, on a proper showing, be enjoined from prosecuting an action in a court of another state. The question, however, as to when this jurisdiction may be exercised is often one of great delicacy, owing to the fact that it may frequently lead to a conflict of jurisdiction. Hence the power is used sparingly, and the applicant must show good equitable grounds, or the injunction will not issue. The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their own jurisdiction to restrain them from doing inequitable acts to the wrong and injury of others, and on the power of the state to compel its own citizens to respect its laws even beyond its own territorial limits. 14 R. C. L., pp. 412, 413. All that is necessary to sustain jurisdiction is that plaintiff should show a clear equity and that defendant is subject to the authority and within the reach of the process of the court, and this requirement is satisfied when it is shown that the institution of the suit in another state is for the purpose of securing to the plaintiff some unfair, unconscionable, or inequitable advantage, or that the prosecution thereof will result in fraud, gross wrong, or oppression, and that the prosecution of the suit in another state is against equity and good conscience, or that the suit is against the public policy of the state in whose court the injunction is sought. 32 C. J., pp. 116, 117. The most frequent ground for granting an injunction of this character is to prevent a citizen of one state from prosecuting an action against another citizen of the same state in a foreign jurisdiction for the purpose of avoiding the laws of his own state. 32 C. J. 117.

"Plaintiff's position makes a responsive appeal to the conscience and the discretion of the court. She is entitled to the fullest measure of protection against

defendant's proposed act. For no apparent reason, except the gratification of his own desires, he is seeking to discard a wife who has done no wrong. He should not be permitted to consummate his scheme of evasion of the laws of his own state and place his aggrieved wife in a situation where she must defend herself against a judgment fraudulently obtained. The fact that plaintiff has a legal defense available in the court in which the contemplated action is brought is no answer to this application and does not affect her right to an injunction. 32 C. J. 118. As a wife she has rights other than mere property rights which can be enforced in a court of equity. I realize that courts should not seek to regulate the morals of their citizens by injunction; neither should they hesitate to protect a wife and mother in her status as such before the public. As was well said by Mr. Justice Dowling in *Greenberg v. Greenberg, supra:* 'Furthermore, the mere fact that a husband has secured a divorce from his wife gives ground for suspicion at least of the virtue and fidelity of the latter, on the part of the general public, in the domicile of both parties, who are unacquainted with the infinite variety of causes for which divorces may be granted in other jurisdictions and have heard only of the usual statutory ground for divorce in this State. A wife who has given no ground for divorce in this State where she and her husband have always lived during their married life, should not be exposed to the humiliation and doubt as to her status raised by a judgment of divorce in another State, even if fraudulently obtained and invalid here.'

"Then too, while a decree of divorce obtained in a foreign jurisdiction would be void here, it would be valid there. Defendant might legally remarry there and flaunt the second wife in the face of the plaintiff and her children. To permit such a contingency is intolerable, violative alike of the principles of morality and the public policy of our state. The court should

not hesitate to assert its power in order to protect a wife whose rights are sought to be destroyed.

"The application for a temporary injunction order is therefore granted."

*Jeffe v. Jeffe, supra* (4 N. Y. S. 2d 628), was an action by the wife against the husband to enjoin him from further prosecuting an action of divorce against her commenced by him in Mexico *and from instituting any action for divorce outside of the state of New York.* The opinion states that after the commencement of the action by the wife the Mexican divorce action had been discontinued. The *Jeffe* case is important, therefore, because the temporary injunction issued had only force to prevent the defendant "from instituting any action for divorce outside of the state of New York." In awarding the wife the injunction the court said (p. 629) : "To deprive the plaintiff of her status by fraudulent resort to a foreign jurisdiction; to impose upon her the burden of defending her rights in any part of the country which the defendant may select as a forum; to cast upon her the suspicion that she was guilty of misconduct justifying a divorce in this state, all point to a direct and immediate invasion of her rights, to protect which equity will award injunctive relief (*Greenberg v. Greenberg,* 218 App. Div. 104, 218 N. Y. S. 87; *Johnson v. Johnson,* 146 Misc. 93, 261 N. Y. S. 523; *Gwathmey v. Gwathmey,* 116 Misc. 85, 190 N. Y. S. 199, affirmed 201 App. Div. 843, 193 N. Y. S. 935)." In *Oltarsh v Oltarsh,* 43 N. Y. S. 2d 901 (a *nisi prius* decision), the wife filed an action to restrain her husband from starting an action for divorce in Nevada. The following is the opinion of the trial court, filed nearly five years after the opinion in the *DeRaay* case was filed:

"Substantial rights already vested under a decree of this court may be nullified by the defendant's impending action in view of the holding in *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, 143

A. L. R. 1273. Under such circumstances the court may intervene to ward off threatened harm. *Greenberg v. Greenberg,* 218 App. Div. 104, 218 N. Y. S. 87.

"Nor is the holding in *Goldstein v. Goldstein,* 283 N. Y. 146, 27 N. E. 2d 969, determinative of this application. That decision was reached prior to the holding in the *Williams* case and depended for its authority upon the validity of *Haddock v. Haddock,* 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. Inasmuch as the *Williams* case has overruled the jurisdictional principles laid down in the *Haddock* case, the threatened injury is no longer illusory. Equity may fashion its remedy to guard against the reality of harm.

"The fact that no action is yet pending in Nevada does not militate against injunctive relief. The imminence of harm is no less real because impending danger has not yet ripened into a destruction of rights. Where peril exists, there the court may intervene to offer its protection.

"The behavior of the defendant gives force to the plaintiff's fear that her husband intends to create a condition which may impair her rights under the decree of separation. The dubious explanation of defendant's presence in Reno, Nevada; the correspondence of the lawyers and other circumstances warrant the conclusion that the plaintiff's fears are based on more than mere suspicion. Upon a trial these fears may prove to be unfounded. At all events, until then, the defendant cannot be prejudiced by a formal restraint of conduct which he professes no desire to pursue.

"The motion is granted. Settle order."

Defendant cites the case of *Goldstein v. Goldstein,* 283 N. Y. 146, in support of his contention that "the courts of Illinois have long followed the sound rule that a divorce secured upon colorable residence in a foreign State is a nullity. . . . A void decree, of course, could not injure the plaintiff in any manner

whatsoever. The fact that the foreign decree will not be enforced is sufficient reason for denying an injunction restraining the suit." In the *Goldstein* case the sole relief sought by the plaintiff was a judgment permanently restraining the defendant and his agent from prosecuting or going forward with an action against her in a Florida court. She obtained a temporary order in the *nisi prius* court. The Appellate Division of the Supreme Court affirmed the order of the lower court denying a motion by the defendant for a dismissal of the complaint and granting a motion by plaintiff for a temporary injunction. The Court of Appeals, in holding that under the facts of the case the courts of the State of Florida were wholly without jurisdiction to render a valid divorce against the plaintiff, after citing *Haddock v. Haddock,* 201 U. S. 562, in support of that holding, said (p. 148): "The plaintiff has nothing to fear from the action which her husband has sought to bring against her in Florida for on her statement a judgment entered therein would be a nullity. She might be annoyed thereby," but that for such a situation an injunction should not be granted. Two strong dissenting opinions were filed in that case, in which the dissenters contended that under all of the circumstances of the case the injunction was properly granted. In our opinion the dissenting opinions are far more persuasive than the opinion of the majority of the court. Moreover, *Haddock v. Haddock, supra,* upon which the opinion of the court was practically based, was overruled in *Williams v. North Carolina,* 317 U. S. 287, 299. We cannot agree with the conclusion of the majority of the court that all that an innocent wife could suffer from a void decree entered against her in another state would be annoyance and injury to her feelings. The instant point raised by defendant was also raised in the case of *Usen v. Usen, supra* (13 A. 2d 738), where the court stated (pp. 746, 747):

"Even a void decree of divorce would necessarily affect the libelee. Undoubtedly it would cause not only confusion and uncertainty as to the status of both parties, but may well cause this plaintiff embarrassment, humiliation and suffering, as alleged, resulting in irreparable injury to her.

"A valid decree of divorce necessarily carries with it the information that it has been judicially determined that the libelee has violated her marriage vows, and that, within the scope of the allegations in the libel, she has been found guilty of some wrong against the libelant; but a void decree stamps 'her name, it may be, with an unmerited disgrace.' *Holmes v. Holmes, supra* [63 Me. 420]. See, also, *Greenberg v. Greenberg, supra;* and *Johnson v. Johnson, supra.*

"In *Forrest v. Forrest, supra* [2 Edm. Sel. Cas., N. Y., 180], the court said: 'It is manifest from the facts as they are spread before me, that the defendant cannot obtain, in his suit in Pennsylvania, a decree which can be binding on his wife here. Would it be right to subject her unnecessarily to the harassing evils of even an invalid decree, or compel her to expend the allowance made to her by her husband, in resisting the granting of such a decree?'

"The court, in *Jeffe v. Jeffe, supra,* says [168 Misc. 123, 4 N. Y. S. 2d 629]: 'To deprive the plaintiff of her status by fraudulent resort to a foreign jurisdiction; to impose upon her the burden of defending her rights in any part of the country which the defendant may select as a forum; to cast upon her the suspicion that she was guilty of misconduct justifying a divorce in this state, all point to a direct and immediate invasion of her rights, to protect which equity will award injunctive relief . . .'

"As pointed out by Mr. Greenleaf, it is '. . . essential to the peace of society that questions of this kind should not be left doubtful, but that the domestic and social relations of every member of the community

should be clearly defined and conclusively settled and at rest.' 1 Greenleaf on Evidence, sec. 525.

"And if a divorce should be granted in Florida which would be valid there and void in Maine, so that the parties might lawfully remarry in one state and not in the other, the status of the parties would not only be definitely unsettled, but actually intolerable. *Johnson v. Johnson, supra.*"

In *Freundlich v. Freundlich,* 47 N. Y. S. 2d 251, the sole purpose of the complaint was to restrain the husband from instituting an action for divorce in another state. The court refused the temporary injunction upon the authority of *DeRaay v. DeRaay, supra,* but the court said (pp. 252, 253):

"Therefore, this application being predicated ostensibly upon the nature of the action alleged in the complaint is technically defective. However, a complaint setting forth the marital status and demanding judgment for separation or some other relief, possibly within the ruling of *DeRaay v. DeRaay, supra,* may warrant equitable relief if it is established that under Section 878, subdivision 1, Civil Practice Act, that the essential marital status alleged in the amended complaint is in imminent danger of being affected by virtue of the defendant's acts and that his conduct would affect the plaintiff's rights respecting the subject of the action to an extent that would render the judgment sought in New York State ineffectual. Under such circumstances equity could grant relief specifically provided for by law and would not be summarily and primarily enjoining a person from changing his domicile." The motion for a temporary injunction was denied (p. 253) "without prejudice to the plaintiff's right to serve an amended complaint within twenty days after service of a copy of this order, with notice of entry."

In 27 C. J. S. 690 the author of the article, Divorce, states: "Also, where both parties are domi-

ciled within the state, an injunction may issue to restrain one of them from instituting divorce proceedings in another state, but such an injunction will not be issued against a nonresident spouse.'' As counsel for defendant points out, in the case cited by the author in support of the text, *Usen v. Usen, supra,* the defendant had commenced a proceeding in another state when the application for an injunction was made. In High on Injunctions, Vol. 2, page 1394, the author states: ''Where a husband or wife leaves the state of their domicile and goes to a foreign state and there secures a mere nominal or colorable residence for the purpose of bringing divorce proceedings, such a case of injustice and irreparable injury is made out as to entitle the aggrieved spouse to an injunction restraining the other from prosecuting divorce proceedings in that state based upon such pretended domicile.'' In the case cited in support of this text, *Kempson v. Kempson,* 63 N. J. Eq. 783, 52 A. 360, the defendant had commenced divorce proceedings in another state. However, it is a reasonable assumption that the author of the article in C. J. S. and the distinguished law writer High, were of the opinion that as an injunction would lie to prevent a husband from prosecuting an action for divorce commenced in another state it would follow that an injunction should issue where he had threatened such procedure.

In the instant case the Superior court of Cook county has jurisdiction of the subject matter and the parties, and the defendant is contesting therein the right of plaintiff to separate maintenance. He has the right to file, in the instant proceeding, a cross-complaint for divorce, but he has not seen fit to do so. He left his home, wife and children shortly after the parties had sold an extensive and valuable business, in which they had been engaged for many years, and had received payment for the same. The complaint alleges that shortly thereafter defendant stated to plaintiff,

for the first time, that he desired a divorce. He does not deny, in his answer, that he intends to go to Nevada for the purpose of obtaining a divorce there. "He denies that he plans to establish a fictitious residence at any place for any purpose, and he avers that if he does change his residence from Chicago, Illinois, it will be a genuine and legal change of residence for a proper and lawful purpose. He denies that plaintiff has any right to restrain him by injunctive process or otherwise from freedom of action which is within his legal rights." In other words, defendant states, in effect, that if he changes his residence and sues for a divorce it will be a genuine and legal change of residence and that, therefore, such a suit would be within his legal rights. All that he directly denies is that he plans to establish a fictitious residence. Not only the answer of defendant, but his brief, plainly indicate his purpose. If he defends the separate maintenance proceeding successfully the temporary injunction will be dissolved, and when he acquires a legal residence at Reno, or any other like place, he will then be in a position, to quote his own words, "to use the courts of his new domicile for any lawful purpose." If, on the other hand, plaintiff is awarded a decree of separate maintenance, it would then be manifest that the allowance of the temporary injunction was justified. We have given time and consideration to the question presented by this appeal and we have reached the conclusion that it would be against equity and good conscience to deny plaintiff the right to the temporary injunction granted by the trial court.

The order appealed from, entered October 3, 1944, reads as follows:

"It Is Ordered that the motion to dissolve the injunction issued in this cause on October 3, 1944 be and the same is hereby denied.

"It Is Further Ordered that the motion to dismiss the complaint be and the same is hereby sustained, and

leave be and the same is hereby given the plaintiff to file an amended complaint within five days from the date of the entry of this order.''

Defendant contends: ''The order dismissing the complaint left nothing to support the injunction. The contradictory character of the order leaves defendant in doubt as to his position.'' Several cases cited by defendant in support of this contention are not in point. In the instant case it will be noted that plaintiff was given five days in which to file an amended complaint. In *Rickerman v. German Mutual Life Ins. Co.*, 172 Ill. App. 189, the court says (p. 191): ''Whatever may formerly have been the rule, the prevailing doctrine is that whenever, pending an injunction, an amendment is allowed to the bill, it is without prejudice to the injunction, which still stands, although the order granting leave to amend is silent as to its effect upon the injunction. So a complainant may amend even after demurrer filed, and the amendment will not prejudice the injunction. High on Injunctions, section 1594; *Selden v. Vermilya*, 4 Sandf. Ch. 573; *Warburton v. London & B. R. Co.*, 2 Beav. 253.''

We have considered the further contentions of defendant that ''The allegations of the complaint do not warrant the issuance of an injunction without notice;'' and ''There is no finding of facts showing 'good cause' in the injunction order, as required by statute, to justify awarding an injunction without bond,'' and we find them without merit.

The interlocutory order of the Superior court of Cook county, entered November 18, 1944, denying defendant's motion to dissolve the temporary injunction; entered October 3, 1944, is affirmed.

*Interlocutory order entered November 18, 1944, affirmed.*

SULLIVAN, P. J., concurs.

FRIEND, J., took no part in the consideration of this cause.