ZECHARIAH CHAFEE *et al. vs.* THE QUIDNICK COMPANY *et als.*

A bill in equity is multifarious if it embraces different distinct matters of diverse natures calling for separate remedies so that the matters cannot be well considered in one proceeding.

Objections on the ground of multifariousness are generally subject to judicial discretion exercised in the particular case.

When a demurrer for multifariousness should be sustained.

Counsellors of other courts allowed by courtesy to appear before the Supreme Court of Rhode Island are held subject to its orders, as if they were its own sworn officers.

A. was appointed receiver of Q.'s personality, a part of which was money due from a debtor in New York, which A. was ordered to collect. Some payments were made to A. by the debtor, after which the debtor was garnished by P., a member of the New York bar, counsel for Q., and Q.'s attorney before this court when A. was made receiver. The garnishment was made in a suit brought by P. against Q. for professional services.

*Held,* that the garnishment was an act of contempt on the part of P.

*Held,* further, that an order should issue to P. commanding the discharge of the attachment and garnishment.

BILL IN EQUITY to establish a lien, for an account and foreclosure, and for an injunction. On demurrer to the bill.

*October* 22, 1881. STINESS, J. A bill is multifarious when it embraces several independent matters of different nature, each of which might be the subject of a bill, which call for separate and distinct remedies of such a character that they cannot be well or properly dealt with in one proceeding.

We think that the bill before us is open to this objection.

In general analysis it sets out,

*a.* That Mary, Fanny, William, and Amasa Sprague transferred 4,022 shares of the capital stock of the Quidnick Company to Chafee as collateral security for debts secured by a trust mortgage, executed by them and the A. & W. Sprague Manufacturing Company to Chafee, with alternative prayers that Chafee may be declared entitled to sell the shares, or that they be sold under the decree of the court, or that an account be taken of the amount for which they stand pledged, to be followed by a decree for foreclosure.

*b.* That certain vexatious and groundless attachments have been placed upon the trust estate, by the defendants, or some of them, to embarrass its sale and impede and delay its settlement; praying that the attachments may be dissolved.

*c.* That Mary and Fanny Sprague, who hold the legal title to said shares in trust for creditors, are, by reason of age, incapable of executing the trust, setting forth certain things which they have permitted to be done prejudicial to the interests of creditors, and praying their removal to prevent the depreciation of the property and ultimate loss, and for an account by them, &c.

*d.* That Chafee has been illegally removed from the office of treasurer, and Benjamin G. Chace appointed in his place; with a prayer that William Sprague, the president of the Quidnick Company, and Chace, the treasurer, may be removed from their respective offices.

These matters neither constitute nor grow out of one transaction, nor are they parts of a series of transactions, all of which must be considered in order to rightly understand the whole, nor are they collateral or incidental to each other, affecting different persons under one general claim of right.

While we recognize the doctrine that objection to a bill for multifariousness is largely "a matter of discretion for the court, depending on its view of the convenience or inconvenience in each particular case," and its ability to provide proper remedy for all the parties in interest, yet, exercising such discretion, and deeming it impracticable to deal with these numerous and independent matters in one suit, we think the demurrer to this bill should be sustained.

On two grounds of the bill as above stated, the creditors need not join the trustee as complainants; on another, that praying for the removal of Mary and Fanny Sprague as trustees of the stock, the creditors alone and not Chafee are the proper complainants, for under the trust they hold the stock for the creditors and not for him, he having no interest in it beyond the pledge, which is quite independent from the trust; still other allegations and prayers would require the representatives of the Hoyt estate to be parties to the bill; while title to and amotion from office could in no event be settled in a proceeding of this kind.

But over and above, there is the controlling objection that some of the matters contained in this bill are already before the court in other bills.

We think the demurrer should be sustained, and that the bill, unless it is amended, should be dismissed.

TILLINGHAST, J., concurred.

POTTER, J., dissented from so much of the opinion as holds the bill of complaint to be multifarious, but concurred in regarding the bill defective because the representatives of the Hoyt estate were not made parties.

*Order in accordance with the opinion of the court.*

October 29, 1881, the complainants filed, by consent of court, an amended bill of complaint.

The bill in this case was filed August 31, 1881, and the subpœnas were made returnable September 3, 1881. On motion of the complainants an interlocutory decree was entered September 10, 1881, containing the following provisions:

"*It is further ordered, adjudged, and decreed that in the mean*

*time, and until further order, said Quidnick Company, its officers, agents, and servants be, and hereby are enjoined from taking any corporate action prejudicial to creditors, and from contracting any debts or other obligations, or entering into any engagement that in any manner can be or become liens upon the corporate property or estate or subject it to liability, and from disposing of any part of the corporate estate or property, or otherwise changing its present condition; and from taking any proceedings or action whatever under the alleged contract between said Quidnick Company and Benjamin G. Chace, purporting to bear date on the 31st day of August, A. D. 1881.*

"*And that Claudius B. Farnsworth, Esq., be, and hereby is appointed custodian of the personal estate and property of the said Quidnick Company, with authority to collect and receive from Harding, Colby & Company, of New York city, or from any other person, any moneys due or owing to said Quidnick Company, or to which it may be entitled by way of advances upon goods or otherwise, and to apply the same in payment of the amounts necessary to properly insure the estates and property of said Quidnick Company for one year; and to the payment of the amount due and owing to this date for labor and services performed at its mills by mill operatives, or other employees, under its contract with the A. & W. Sprague Manufacturing Company, and to hold the balance subject to the further order of this court.*

"*Said custodian to take and return to the court an inventory. . . .*"

October 11, 1881, petitions under oath were filed by the complainants, and also by Farnsworth, custodian, setting forth

"That at the hearing in the cause at which said decrees were entered, Benjamin F. Butler, Roger A. Pryor, and Andrew B. Patton appeared as solicitors and of counsel for the defendants, and were heard in respect of said decrees, and had actual personal notice of the entry thereof in the cause.

"That said Butler, Pryor, and Patton, disregarding said decrees, and, as your petitioners claim, in violation and contempt thereof, have, to wit, on the 3d day of October, A. D. 1881, caused an action to be instituted against said Quidnick Company in the Supreme Court for Kings County, in the State of New York, in

the name of said Pryor, the said Butler and Patton having formally assigned their alleged claims to said Pryor for that purpose, to recover the sum of twenty-one thousand (21,000) dollars for professional services claimed to have been rendered by them to said Quidnick Company, in the suits now pending in this court, and caused the original writ or process in their said action to be served by attachment of the moneys and property of said Quidnick Company in the hands of said Harding, Colby & Company; thereby preventing the said Farnsworth, as receiver and custodian as aforesaid, from obtaining the same to be paid and delivered over to him by said Harding, Colby & Company, as provided by the decrees aforesaid, and thereby, as your petitioners claim, violating the injunction contained in said decrees, and also interfering and intermeddling with and attempting to arrest and convert to their own use property in the custody of the court, and placed in the hands of said Farnsworth, as custodian under the decree aforesaid, contrary to the course of equity in such case. . . .

" Wherefore your petitioners pray that said Butler, Pryor, and Patton may be cited to show cause why they should not be proceeded against as for contempt of the injunctions, and receiver's possession aforesaid; and if for any cause it shall be held that by their proceedings aforesaid they have not been guilty of the violation of said injunctions, or otherwise the exigencies of your petitioner's case in the premises shall require it, that they and each of them may be specially enjoined from further prosecuting their action aforesaid in said court of New York, and from otherwise in any manner interfering or meddling with the property of the Quidnick Company in said hands and custody of said Farnsworth, as receiver and custodian as aforesaid."

On these petitions a hearing was had October 22, 1881, Benjamin F. Butler, appearing for himself, Pryor, and Patton; Butler being a member of the bar of Massachusetts, and Pryor of that of New York.

*October* 29, 1881. STINESS, J. By decrees of this court entered on the 3d and 10th days of September, 1881, C. B. Farnsworth, Esq., was appointed special receiver of the personal property of the Quidnick Company, and directed, among other things, to collect a balance due to it from Messrs. Harding, Colby & Company, its selling agents in New York.

The respondents were counsel for the Quidnick Company in that matter, and were not only before the court at the time the order was made, but assented to it, in behalf of the Quidnick Company, and assisted in its preparation.

The receiver entered at once upon his duties, and has collected, from time to time, on account, portions of the debt above mentioned, a large sum however still remaining in the debtors' hands in New York.

On the 3d day of October, 1881, while the suit against the Quidnick Company was still pending in this court, and the receiver was still executing the duties of his appointment, the funds of the Quidnick Company, in the hands of Harding, Colby & Company, were attached upon a suit brought by one of the respondents, Gen. Pryor, in behalf of himself, Butler, and Patton, for a debt alleged to be due from the Quidnick Company for fees for legal services rendered by them, amounting to $21,000.

Thereupon the receiver presented his petition to this court, setting forth the facts and asking for instructions; and the complainants in the suit also presented a petition that the attachment and suit in New York might be enjoined, and these respondents adjudged to be in contempt.

The elements of the matter then are these : one of the respondents has attached funds which the receiver was ordered to collect; the property attached is outside the jurisdiction of the court; it had not come into the hands of the receiver; two of the respondents, Gen. Pryor, who is plaintiff in the attachment, and Gen. Butler, though counsel in the suit before us, are not counsellors of this court nor residents of this State.

Under these facts what is the power and duty of the court? That every court must see to it that its orders and decrees are respected and obeyed, no one can question. Without this judicial proceedings would cease to have power or significance, and courts could no longer, in any efficient sense, be regarded a part of the government. We but echo the universal doctrine when we say that, to the utmost limit of the jurisdiction and authority of this court, its orders shall neither be interfered with nor disobeyed. But it is here claimed that the appointment of a receiver has no effect beyond the jurisdiction of the court appointing him.

That is true.  A receiver is the hand of the court to take and hold property in dispute until it can be determined to whom it belongs.  That hand can reach no farther than the arm of the court extends.  A receiver, as such, has no power or standing in the courts of other States but that which a purely discretional comity may grant, and decisions in this country upon the question whether even this privilege can be recognized have been diverse.

See *Booth* v. *Clark*, 17 How. U. S. 322; *Hunt* v. *Columbian Insurance Co.* 55 Me. 290; *Taylor* v. *Columbian Insurance Co.* 14 Allen, 353; *Runk* v. *St. John*, 29 Barb. S. C. 585; *Hoyt* v. *Thompson*, 5 N. Y. 320.

In *Booth* v. *Clark*, cited by the respondents, Mr. Justice Wayne says : A receiver " has no extra-territorial power of official action ; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property."

Relying upon this well-settled law, the respondents contend that they have been guilty of no contempt because they have attached no property over which the receiver had control.

The argument of the respondent does not touch the real point of the matter.

The debtors in New York had notice of the receiver's appointment, and had so far recognized his authority as to make large payments to him on account.

It does not appear that they would not have paid the balance remaining due, if this attachment by the respondent had not been made, which now, whatever their willingness, prevents such payment.  The question, then, is not whether the order of the court can operate, *ex proprio vigore*, outside of its jurisdiction; nor whether the receiver would have authority in New York to compel a payment of these funds to him.  It is, have the respondents, by their action, interfered with and obstructed him in doing that which the court directed him to do ; or have they intercepted funds and prevented them from coming to his hands, when otherwise he might have received them ?  That this has been done by one of the respondents is admitted.  Does it then amount to a contempt of the order of the court?  That it would be a con-

tempt if the thing were done in this State, and as to property already under the receiver's control, is beyond question. Is the case then any different because the funds attached are outside the jurisdiction of the court, and due to, but not in, the possession of the receiver ?

In *Langford* v. *Langford*, 5 Law Journal N. S. Eq. 60, where a court in England had appointed a receiver of estates in Ireland, it was held " that though the court had no power of sending its officers to Ireland to enforce its decrees, yet if they be resisted by a party to the cause, such party is guilty of contempt."

In *Ames* v. *Trustees of Birkenhead Docks*, 20 Beav. 332, Lord Romilly says, p. 353 : " There is no question but that this court will not permit a receiver, appointed by its authority, and who is therefore its officer, to be interfered with or dispossessed of the property he is directed to receive, by any one, although the order appointing him may be perfectly erroneous; this court requires and insists, that application should be made to the court for permission to take possession of any property of which the receiver either has taken or is directed to take possession, and it is an idle distinction, which could not be maintained if it were attempted, that this rule only applies to property actually in the hands of the receiver. If a receiver be appointed to receive debts, rents, or tolls, the rule applies equally to all these cases; and no person will be permitted, without the sanction or authority of the court, to intercept or prevent payment to the receiver of the debts, rents, or the tolls, which he has not actually received, but which he has been appointed to receive."

The case of *Vermont & Canada Railroad Co.* v. *Vermont Central Railroad Co. et al.* 46 Vt. 792, is exactly in point.

The Vermont Central Railroad Company had been appointed receiver of both roads, and as such had operated them and other roads under lease.

Funds were due from corporations and parties in other States, and the Vermont and Canada Railroad Company brought a suit in Boston against the Vermont Central Railroad Company, summoning the parties holding said sums of money as trustees of the defendant, " for the purpose of locking up said funds in the hands

of the trustees, who were in doubt whether they could safely pay the balances " to the receiver.

It was held to be contempt.  Referring to and quoting the rule cited above from *Ames* v. *Trustees of Birkenhead Docks*, Chancellor Royce adds : " The necessity for this rule is obvious; for if a party to the suit can wrest the possession of the property from the receiver or manager, he may in this way defeat the purpose of the appointment.  The petitionee would not have been permitted to attach the funds of the petitioner in the courts of this State, and he can obtain no superior equity in the courts of another State.  And it is competent for this court to restrain by injunction, parties within its jurisdiction, from doing those acts in another State which would subject them to that process if done here."

Upon this authority it is clear that a party who interferes with funds which a receiver is directed to collect, though outside the jurisdiction of the court, is guilty of contempt.

But it may be urged that even if this is the law as to a party to a suit, it does not affect an attorney in such suit.  This objection cannot be admitted.  An attorney and counsellor is an officer of the court ; he is presumed to understand its orders, and is sworn to obey them ; above all others he should be alert in supporting its decrees and authority, rather than in seeking devices to elude them.  Can it be then that a court will permit in its officers what it denies to a suitor ?  Clearly not.  Two of the respondents are not counsellors of this court, but are members of the bar in other States.  This can make no difference in the matter before us.  By comity they are permitted to appear in this and other kindred cases.  In three causes still pending before the court they are of counsel on the record.

With their own hands they assisted in framing the very decrees under which the receiver was appointed.  For this case at least they must be regarded as officers of the court, and subject to its jurisdiction, to be dealt with in the same manner as those who are regularly enrolled upon our list.  The accident of residence is unimportant.  *Thomas* v. *The State*, 58 Ala. 365, 368.

To this we may add that Gen. Butler in his argument expressly disclaimed, for himself and Gen. Pryor, any different relations to

the court than those of our own bar; stating that they have by courtesy and for the time what our members have permanently and by right; and he requested the court to consider them as fully within our jurisdiction as those who are resident in the State. And this we have done.

Only one other thing remains to be considered. The suit is brought in New York by Gen. Pryor as plaintiff, in behalf of himself, Gen. Butler, and Mr. Patton, who have assigned their claims to him; from which it would appear that though he was the nominal plaintiff, yet that all three were really parties in interest, and actual, though not nominal, co-plaintiffs.

If this were so, all would stand in the same plight before the court. But Messrs. Butler and Patton say they have sold their claim to Gen. Pryor, and have no control over the suit in New York, in which he alone is plaintiff.

We must accept this as true, because, save the recital in the writ or complaint, which may be merely formal, nothing is shown to the contrary; and further, we cannot believe that respectable counsel would openly state to the court that they had sold a claim which they had merely transferred to the name of another for the purpose of enabling him to make an attachment in New York in their interest, which, as non-residents, they could not do in their own names; nor can we believe that honorable gentlemen would seek through a technicality to evade a common responsibility in a common cause, or that they would desert an associate when he was called to answer for what he had done on their behalf.

As the matter stands, therefore, Gen. Pryor, on his own responsibility, has intercepted by attachment funds which the receiver is entitled to collect; this act is in derogation of our order; by virtue of Gen. Pryor's relation to the court, we have jurisdiction and may require obedience at his hands.

We therefore order that he be enjoined from further prosecution of said suit as against the parties who have been garnished, and the funds which have been attached; that within five days from the entry of this order, he shall release and discharge in writing the persons garnished and each of them, from all claim which he has in said funds by reason of said attachment, and

effectually discharge them from all liability to answer in said suit for any of the funds which were in their hands at the time of the attachment.

The receiver having been instructed in his petition to answer the suit in New York to prevent a judgment by default, needs no further advice at present.

TILLINGHAST, J., concurred.

POTTER, J., dissented.

*Order accordingly, entered October 29, 1881.*

November 5, 1881. Pryor appeared and submitted evidence that the order had been obeyed.