## WENCESLAO BORDA vs. AVICE WEED BORDA.

### JUNE 15, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Divorce. Extreme Cruelty.*

Although there may be no evidence of physical violence, yet a course of conduct toward a petitioner for divorce, wilfully and maliciously persisted in which naturally results in causing wretchedness of mind affecting the health and rendering it impossible to longer endure conjugal relations with a respondent warrants a finding of extreme cruelty.

*(2) Divorce. Evidence. Admissions.*

The fact that a petitioner for divorce coupled an admission that he was the father of a child with the statement unquestionably false that respondent was its mother, will not result in such untruth as to the maternity of the child negativing his admission that he was the father and hence guilty of adultery when such finding is also supported by a mass of circumstantial evidence.

*(3) Divorce. Gross Misbehavior.*

A finding that petitioner was guilty of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant is supported by evidence that petitioner consorted with another woman, caused respondent to be recorded on the public records as the mother of the child of another woman and caused the child to be baptized as the lawful child of himself and respondent.

*(4) Divorce. Depositions.*

Depositions may be taken in divorce cases before a standing master in chancery under Gen. Laws, cap. 292, § 40, without a special order of the court referring the matter to the master.

*(5) Divorce. Evidence. Records.*

In a divorce proceeding, copy of birth certificate recorded in the public records, was properly admitted in connection with the testimony of the physician who had made and filed such certificate and also copy of baptismal record of the child made in a church, in connection with the testimony of the priest who made the record.

DIVORCE. Heard on exceptions of petitioner and overruled.

SWEETLAND, C. J. The above entitled cause is a petition for divorce in which the respondent availing herself of the statutory provision in that regard has filed a motion in the

nature of a cross petition in which she asks for the affirmative relief of an absolute divorce from the petitioner.

The petitioner has not prosecuted his petition but after the filing of respondent's said motion has sought to discontinue. This the petitioner was not permitted to do, and thereby impair the respondent's right to have a hearing and determination upon her motion in the nature of a cross petition. *Borda* v. *Borda*, 43 R. I. 384.

The respondent's motion was heard in the Superior Court before Mr. Justice HAHN, who entered his decision granting the respondent an absolute divorce from the petitioner upon the grounds that the petitioner was guilty of extreme cruelty toward the respondent, of adultery, and of gross misbehavior and wickedness repugnant to and in violation of his marriage covenant with the petitioner, in that he consorted with another woman, and that he caused the registration of the birth and the making of the baptismal record of a child as that of himself and the respondent when said child was not that of the respondent.

At the hearing before Mr. Justice HAHN the petitioner appeared by counsel and, although he did not testify or present evidence in defence, he did contest the granting of the respondent's motion by the cross-examination of her witnesses and by numerous objections to the rulings of said justice made at the hearing; his exceptions to which rulings he has pressed before us.

Prior to said hearing the petitioner had been enjoined by the Superior Court from prosecuting a proceeding for divorce from the respondent which he had instituted in Porto Rico after the filing of his petition and the motion of the respondent. Although it appeared to said justice that the petitioner had violated the decree of injunction and was in contempt, nevertheless no objection was offered by the respondent and the petitioner was given a full opportunity to present such evidence as he desired in support of his original petition and in defense of the cross petition of the respondent.

The petitioner excepted to the ruling of said justice in which he refused to dismiss the respondent's motion in the nature of a cross petition. The petitioner contended in the Superior Court, and also before us, that the evidence shows that the respondent was not a domiciled inhabitant of Rhode Island for two years prior to the filing of said motion and hence that the Superior Court did not have jurisdiction to hear and grant said motion. The exact domicile of the petitioner at the time of filing his petition is somewhat uncertain. He clearly was not a domiciled inhabitant of Rhode Island. He did reside for portions of the year in Porto Rico but the evidence supports the finding of the justice that the petitioner was, as he himself alleges in his petition, a resident of the city of New York. The respondent before her marriage to the petitioner had been a resident of the town of Narragansett. When, as she claims and as said justice found, she was forced to leave the petitioner in 1916 because of his cruel treatment of her, she returned to Narragansett, where she owned a house which she occupied and where she had lived for about three years and a half just before the filing said motion. The evidence warranted the finding of said justice that for more than two years prior to filing her motion in the nature of a cross petition the respondent had the intention of making the town of Narragansett her permanent residence and that she was a domiciled inhabitant of this state within the requirement of the statute. The petitioner being without a domicile in this state was obliged to rely upon the domicile of his wife in order to give the Superior Court jurisdiction over his petition for divorce and in said petition he made oath that the respondent has been "a domiciled inhabitant of the State of Rhode Island and has resided in said state, to wit, in the town of Narragansett, in Washington county, for a period of more than two years next before the preferring of this petition."

The petitioner excepted to the decision of said justice that the petitioner had been guilty of extreme cruelty towards

the respondent. There was no evidence before said justice of physical violence upon the part of the petitioner toward the respondent but there was shown a course of conduct on the petitioner's part, wilfully and maliciously persisted (1) in, which naturally resulted in causing in the respondent a wretchedness of mind affecting her health and making it impossible for her to longer endure conjugal relations with the petitioner. This court has departed from the doctrine of earlier cases requiring evidence of physical violence or of threats of such violence to establish a charge of extreme cruelty in divorce. *Grant* v. *Grant*, 44 R. I. 169. The justice was warranted in finding that the respondent was in ill health from the time of her marriage to the petitioner to the time of their separation; that she was very fond of her daughter, the issue of a former marriage, and also of a sister and a daughter adopted by her before her marriage to the petitioner; that the respondent assisted these three women financially; that contrary to the wish of the petitioner she intended to provide liberally for them in any testamentary disposition that she might make of her extensive property; that the petitioner persisted in most cruel and vile attacks upon the moral character of these women, especially the respondent's daughter and sister; that he did this in letters written to the respondent and also in conversations with others in her presence, in public places, in hotels and restaurants in New York and on numerous occasions at their home in Porto Rico in the presence of servants and guests who were of the highest political and social standing in the island. These statements do not appear to have been made by the petitioner in anger but with a malicious intention of humiliating the respondent and destroying her peace of mind. The respondent testified that she had destroyed most of the letters of this nature which the petitioner had written to her. One letter is in evidence as an exhibit in the case. The statements in this letter as to the character of the respondent's daughter and sister are unspeakably vile, particularly with reference to that of the

daughter. The continued abuse of those who were very dear to her can have had no purpose save to cause pain to the respondent. This deliberately cruel conduct of the petitioner undoubtedly affected the already impaired health of the respondent, as she claims that it did, and as her physician testified would be its natural result.

The petitioner excepted to the decision of said justice that the petitioner was guilty of adultery. The justice was warranted in finding from the testimony that for a considerable period in September and October of 1917, the petitioner and a woman, who was not his wife and was then known as Mrs. Borden, were living at the same hotel in New York City, and were very closely associated there; that he consulted with a physician in regard to her condition and was present in her room at the hotel when said physician attended her; that on November 1, 1917, this woman was delivered of a male child at a private lying-in hospital in New York City; that the petitioner was a frequent visitor at said hospital during her confinement and delivery, and was much interested in her condition; that he gave to the physician in attendance upon the woman the information from which the certificate of birth was made for public record; that he then stated that he was the father of the child and that the said women was his wife, Avice Weed Borda, this respondent; that shortly after the birth, the mother and child, accompanied by a nurse, returned to the hotel where they and the petitioner continued to live for several weeks; that the petitioner personally sought a baby specialist to attend the child; that the child was then placed by the petitioner in the care of the petitioner's aunt, in whose family the child has lived up to the time of the hearing; that the petitioner took the child, the petitioner's aunt and an intimate friend in a cab to a Catholic church in New York City and there on December 6, 1917, he caused the child to be baptized as Wenceslao Borda, Jr.; that by his invitation said friend became the godfather of the child and the petitioner's aunt became the godmother; that he caused

the baptismal record to be made in the church that he was the father of said child and that this respondent was the mother; that the petitioner has visited the child frequently and has had him brought to the petitioner's apartments in New York City and to his residence in Porto Rico.; that he exhibited marked affection for the child and referred to him as "his Billy," and as "his child." The above facts were unknown to the respondent until after the filing of this petition for divorce against her. All of these facts appeared in the depositions of witnesses taken a number of months before the hearing in the Superior Court. At the taking of these depositions the petitioner was represented by counsel, who cross-examined the witnesses. To these serious charges the petitioner has offered no answer, neither by his own testimony nor by that of other witnesses. Be-. cause of the mass of circumstantial evidence supporting it, the justice was warranted in accepting as true the admissions of the petitioner as to the paternity of the child Wenceslao Borda, Jr., born November 1, 1917, and in finding that the petitioner was guilty of adultery with the mother of the child, known as Mrs. Borden, during the early part of the year 1917.

Petitioner's counsel suggests that the petitioner's admission that he was the father of said child should be entirely disregarded because he coupled that admission with the statement unquestionably false that the respondent was the child's mother. The petitioner will not be permitted for his own purposes thus to invoke the maxim *falsus in uno, falsus in omnibus*, a maxim applicable in attacking the credibility of an adversary witness. The object of the petitioner in causing the respondent falsely to be recorded as the mother of this child can only be inferred from the testimony. The inference may be drawn that regardless of his wife's rights or wishes he desired to procure a record of legitimacy for a natural child of his that he had decided to acknowledge, or the inference of said justice is warranted that the purpose of the petitioner was in this way to lay the

foundation for a claim in-favor of himself and his child upon the respondent's estate in case of her decease. Whatever may have been the petitioner's object his conduct was reprehensible and without reasonable and convincing explanation warrants the conclusion that it had an evil purpose. Although his statements that the respondent was the mother of the child were false, such untruth does not negative his own admission that he was the father and hence guilty of adultery, which is supported by the circumstances noted above.

Counsel have argued to us that the conduct of the petitioner in connection with the birth of the child, his statements for the purpose of public record and baptism, and his subsequent relations with the child do not have the significance that said justice has given to them, but that these circumstances should be regarded merely as indications of a purpose in the petitioner to adopt as his own the child of other parents. The petitioner has not seen fit to come into court and make this explanation for himself. Counsel have stated to the court that they are not in his confidence in that regard and are unaware of the real meaning of the petitioner's action. The statement and admissions of the petitioner, himself, and what said justice has properly found to be the natural meaning and intent of his conduct, should be given greater weight than the unsupported conjecture of counsel.

The petitioner has excepted to the decision of said justice that the petitioner was guilty of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant in consorting with another woman and in causing the respondent to be recorded in the public records of the city of New York as the mother of the child of another woman and in causing said child to be baptized as the (3) lawful child of himself and the respondent. The evidence fully warrants these findings. The first of these offences against the marriage covenant is licentious in its character, the last two, in their painful effect upon the mind and

feelings of the respondent, partake of the nature of cruelty. They thus conform to the requirements for such causes of divorce as the same were set out by this court in *Stevens* v *Stevens*, 8 R. I. 557.

The petitioner excepts to the ruling of said justice in receiving the depositions, taken in this state with all legal formality before a standing master in chancery but not upon the special reference and order of the court. The statute provides, Section 40, Chapter 292, General Laws, 1909, that "In all divorce proceedings the testimony shall be given in open court. . . . (3) unless the deposition be taken (4) before a standing master in chancery." The petitioner contends that a proper construction of this statute requires that, before a standing master in chancery can have authority to take a deposition to be used in divorce proceedings, the taking of such deposition must be referred to him by a special order of the court in accordance with the ordinary practice in equity concerning references to masters in chancery. Such has not been the construction which in practice has been placed by the court upon this statutory provision since its enactment. Depositions have been received without question when taken with legal notice and formality before a standing master in chancery upon the request of a party acting through his counsel. We see no sufficient reason for disturbing this well established practice. This exception should be overruled.

The petitioner excepted to the rulings of said justice at the hearing admitting in evidence a copy of the birth certificate and the corrected birth certificate of said child (5) recorded in New York City, and also a copy of the baptismal record of said child made in said Catholic church in New York City. There was no error in these rulings. Said certificate and corrected certificate were properly received by the court in connection with the testimony of the physician who had made and filed said certificates; and the copy of the baptismal record was properly received in

connection with the testimony of the priest who had made the record.

We have examined the large number of exceptions taken by the petitioner to the rulings of said justice in the admission of testimony and we find no merit in any of them.

The petitioner has appealed from the decree of the Superior Court enjoining the prosecution of the divorce proceedings in Porto Rico. There is no merit in said appeal. The decree of the Superior Court is affirmed and our affirmation of the same is ordered certified to the Superior Court.

All of the exceptions of the petitioner are overruled and the case is remitted to the Superior Court for further proceedings in accordance with the decision of said justice.

*Knauer, Hurley & Fowler,* for petitioner.
*Tillinghast & Collins,* for respondent.