Marie J. Kleinschmidt, Plaintiff-Appellee, v. Edward E. Kleinschmidt, Kleinschmidt Laboratories, Inc., Defendants.

Edward E. Kleinschmidt, Certain Defendant-Appellant.

Gen. No. 10,466.

Opinion
filed May 24, 1951. Rehearing denied July 17, 1951. Released for
publication July 17, 1951.

VOGEL & BUNGE, of Chicago, for appellant; L. H.
VOGEL, and GEORGE C. BUNGE, both of Chicago, ALBERT
L. HALL, of Waukegan, of counsel.

HARRY C. ALBERTS, and TAYLOR E. WILHELM, both of
Chicago, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Defendant, Edward E. Kleinschmidt, is prosecuting
this interlocutory appeal from a temporary injunction
issued by the circuit court of Lake county, in a divorce
proceeding, enjoining defendant from litigating a di-
vorce action previously instituted by him in the State
of Florida against the plaintiff, Marie J. Kleinschmidt.

The primary issue presented in this cause is the
propriety of the issuance of the temporary injunction
by the circuit court under the facts and circumstances
presented by the record.

From the record it appears that plaintiff, Marie
Kleinschmidt, and defendant, Edward Kleinschmidt,
were married at Highland Park, Illinois on September

25, 1937, at which time plaintiff was 26 years of age and defendant was 61. On July 19, 1939, defendant, Edward Kleinschmidt, filed suit for divorce against plaintiff in Lake county, in which proceeding plaintiff filed an answer and cross-complaint. In connection with the settlement and dismissal of that action, the parties entered an agreement whereby plaintiff waived her dower rights in return for numerous grants, including 500 shares of American Telephone & Telegraph stock, a contract that the defendant would "buy or build a suitable residence in such community as the parties may hereafter agree upon to be used as a home for them," which property was to be held in joint tenancy, and defendant's commitment to assign plaintiff a half interest in any and all inventions which defendant may make after December 1, 1939.

Pursuant to the agreement, a home was built in Florida, which contained the property and personal effect of both parties, who resided there continuously from 1941 to 1944, and again in 1949. Plaintiff contends that the 1949 stay was merely an extended vacation, whereas defendant insists that the parties lived there from early 1949 until shortly before he instituted divorce proceedings on November 19, 1949, and that plaintiff left the state to avoid service, but he continued to reside there until May 26, 1950, when plaintiff filed suit in Illinois.

In defendant's divorce action in Florida, in which he is the plaintiff, it is alleged that both parties were residents of Miami Beach, Dade county, Florida. In addition to the prayer for divorce, supported by appropriate allegations, defendant (plaintiff therein) sought an injunction, enjoining Marie Kleinschmidt from molesting him or interfering with his work, and a determination of which inventions should be assigned to her under the 1939 agreement, as well as an order requiring her to deliver up his signed copy of that agreement, which she allegedly removed.

542

The Florida court overruled Marie Kleinschmidt's motion to quash service and ruled that her appearance and participation constituted a general appearance. A certified copy of this order appears in the record. Some six months after the Florida proceedings were instituted by Edward Kleinschmidt, Marie Kleinschmidt filed the complaint herein on May 26, 1950, alleging that the parties were residents of Illinois. The complaint refers to the earlier divorce proceedings in 1939 and the agreement, which plaintiff alleges defendant failed to perform in various particulars, and further alleges that Edward Kleinschmidt has no grounds for divorce, but, on the contrary, has been guilty of various alleged acts of cruelty toward her. Plaintiff made as parties defendant, Kleinschmidt Laboratories, Inc., Continental Illinois National Bank & Trust Co., American Telephone & Telegraph Co., Thomson & McKinnon, all of which are alleged to have in their possession money or property belonging to the plaintiff.

The ensuing sequence of pleadings and orders followed. On May 31, 1950, the Illinois court, on the application of plaintiff, entered an order restraining the several defendants, other than Edward Kleinschmidt, from transferring any assets belonging to him until further order of the court. On July 3, 1950, Edward Kleinschmidt filed his appearance and motion to dismiss on the ground that there was a prior action pending between the parties in Florida, in which plaintiff herein had entered a general appearance. This motion was denied on July 11, 1950, and the court ordered defendant to answer by August 21, 1950. On August 4, 1950, plaintiff filed a petition for a temporary injunction restraining Edward Kleinschmidt from further prosecuting his Florida action, and for attorney fees. On August 21, 1950, defendant, Edward Kleinschmidt, filed a motion to strike the complaint on

543

the ground that it was insufficient in law, and on September 1, 1950, plaintiff obtained leave to file an amendment to the complaint instanter, which the court ordered defendant to answer within 5 days.

In this amendment plaintiff alleged that defendant was unable to obtain a divorce under Illinois law, that plaintiff believes that the courts of Florida grant divorces regardless of merit, and that if defendant is allowed to proceed in Florida it will be in the evasion of the Illinois laws, and will cause plaintiff great hardship, hence, an injunction should be issued without bond, restraining defendant from proceeding with the Florida action until further order of the court.

On September 5, 1950, while defendant's motion to strike was still pending, and before the expiration of the 5 days which the court had allowed defendant to answer the amendment, the court heard plaintiff's application for a temporary injunction restraining defendant from prosecuting the Florida action. At this hearing defendant's counsel objected to the injunction on the grounds that the complaint did not state a cause of action, since the allegations of cruelty were insufficient; that there was no allegation that defendant's residence in Florida was fraudulent; that the Florida court has jurisdiction of defendant's action, in which plaintiff has appeared generally; and that there are no allegations of inconvenience or hardship to plaintiff. Moreover, defendant's counsel called the attention of the court to the fact that the time for defendant to answer had not yet expired, and that his motion to strike was still pending. In support of defendant's denial that the parties resided in Illinois, counsel asked leave to call plaintiff under sec. 60 of the Civil Practice Act as an adverse witness; offered to present a certified copy of plaintiff's voters registration in Florida; and also argued that in the contract, which plaintiff made a part of the complaint, it was

544

agreed that the sum of $25,000 be spent in 1939 to buy or build a suitable residence as a home for the parties in Florida.

The circuit court stated that it was obliged to assume as true the allegation of Illinois residency in plaintiff's complaint, for the purposes of the application for the injunction, and could hear no evidence on that issue until an answer was filed. The court, however, gave defendant until the following morning to answer, notwithstanding the fact that defendant's motion to strike was pending.

On the following morning, September 6, 1950, defendant advised the court that on the previous afternoon the circuit court of Dade county, Florida, entered a temporary injunction, restraining plaintiff herein from prosecuting this suit until further order of the Florida court. Without further consideration of the answer, which defendant had prepared in compliance with the order entered the preceding day, and without hearing any evidence on the issue of the residency of the parties, the circuit court issued the injunction enjoining defendant from proceeding with his action in Florida, from which order defendant excepted, and prosecuted this appeal.

Defendant did proceed, however, that same day, to file the verified answer to the amendment, in which he reserved all of the benefits of his motion to strike the complaint, but denied all the allegations of the amendment, and alleged that plaintiff and defendant resided in Florida from 1941 to 1949; that about the time defendant filed his divorce action against plaintiff she fled the state to avoid service of process, and filed a motion to quash, which the Florida court ruled constituted a general appearance; that since 1941 defendant has not been a resident of Illinois; that the Florida court on September 5, 1950, entered a temporary injunction restraining plaintiff herein from further

545

prosecuting this action; that the injunction prayed for by plaintiff herein is sought, not to protect her legal rights, but to harass and obstruct the defendant.

Plaintiff filed a reply to this answer on October 2, 1950, after the expiration of the statutory period therefor.

In determining whether the court erred in issuing the temporary injunction, this court will consider first, the effect of the Florida injunction, and secondly, whether this extraordinary remedy was warranted in view of the prior institution of the Florida proceedings, the contested residency of the parties, and without considering defendant's answer and any further evidence on the issue of residency.

■ It is apparent that an injunction against the prosecution of an action in another State acts upon the parties rather than the court, and, therefore, the court in which the enjoined action is pending has the power to proceed with the litigation despite the injunction. (28 Am. Jur. 392; 128 A. L. R. 1469.) Nevertheless, that court will generally take cognizance of the judicial processes of another State, and recognize an injunction issued by the court of another State as a matter of comity. (43 C. J. S. 504; *Allen v. Chicago Great W. R. Co.*, 239 Ill. App. 38.)

In the *Allen* case, *supra*, where the Iowa court issued an injunction enjoining the Illinois proceedings, it was held that the Illinois court should have granted defendant's motion for a continuance pending the determination of the Iowa litigation. The court stated at p. 43:

"The *Kavanagh* case announced that a court in this State may, in certain situations, enjoin a citizen here from prosecuting a case in another State; and by parity of reasoning, that implied that a court of Iowa, for example, may exercise a similar authority. And a consequence of both deductions is, that in proper cases

the courts of each State may recognize the injunctions of the courts of the other.''

■ Failure to take cognizance of the injunction issued by the courts of other States will not render the decision void or erroneous, according to the weight of judicial authority. (43 C. J. S. 504.) In the instant case, therefore, the failure of the circuit court to recognize and give effect to the Florida injunction will not be deemed reversible error, and the action of the court must be adjudged in the light of the other facts and circumstances.

■ The issuance of a temporary injunction enjoining the proceeding in the court of another State is deemed an extraordinary remedy, and will be exercised sparingly. (28 Am. Jur. 392; 43 C. J. S. 499; 21 C. J. S. 858; *Royal League v. Kavanagh,* 223 Ill. 175; *Kahn v. Kahn,* 325 Ill. App. 137, 147; *Russell v. Russell,* 329 Ill. App. 580, 586.)

With reference to the circumstances warranting the issuance of injunctions against proceedings in other states, the court in the *Kavanagh* case, *supra,* stated:

''. . ., the court will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong or injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign state would arrive at a judgment different from the decision of the courts in the state of the residence of the parties. (Citation.) It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to

547

appear that an equitable right will otherwise be denied the party seeking relief. (Citation.)''

Similarly, in 43 C. J. S. 502, it is stated:

''An injunction will not be granted merely because complainant prefers to have the matter adjudicated by his own courts, or there is some distrust of the courts of the sister state, or from consideration of mere inconvenience, particularly where the action in the foreign state is first commended and the court has jurisdiction of all the parties.''

Thus, neither plaintiff's assertions that the Florida courts grant divorces without regard to the merits of the case, nor her claim that she would be subjected to inconvenience and expense in defending the Florida action, furnish any basis for injunctive relief. (*Royal League v. Kavanagh, supra; Mobile & Ohio R. Co. v. Parrent,* 260 Ill. App. 284; 43 C. J. S. 471.)

The Illinois courts have, however, enjoined pending and threatened divorce actions instituted in other states after proceedings had been commenced in Illinois, where it appeared that the parties were residents of Illinois, and that the defendant was seeking to establish, or had established colorable residence elsewhere, for the purpose of obtaining a divorce in circumvention of the laws of Illinois, on the theory that such conduct would result in a fraud or gross wrong against a citizen of this State. *(Kahn v. Kahn, supra; Russell v. Russell, supra.)*

In support of her contention that the issuance of the injunction by the circuit court herein was in accordance with precedent, plaintiff relies essentially upon two Illinois cases which we shall closely consider.

In *Kahn v. Kahn, supra,* the wife filed a separate maintenance suit in Cook county, and without notice or bond, obtained a temporary injunction restraining

548

her husband from carrying out an alleged threat to institute a suit for divorce in Nevada. The issue in the cause was whether the threats to institute the Nevada proceedings warranted the issuance of an injunction in the absence of the actual commencement of the action, and the court held that since an injunction would lie to prevent a husband from prosecuting an action for divorce commenced in another state, it should issue where he had threatened such a procedure.

In *Russell v. Russell, supra,* after divorce proceedings were begun in Illinois, in which the husband filed a counterclaim, admitting his Illinois residence, he proceeded to establish residence in Nevada, and filed a suit for divorce there. This action was commenced some 4 days after plaintiff had filed a petition in Illinois restraining such action, and the Illinois court held that an injunction would lie to prevent him from continuing his out-of-state action, on the grounds that he had admitted in his counterclaim that he was a resident of Illinois, and had obviously left the state to acquire colorable residence in order to institute divorce proceedings.

Thus, it appears, that in the Illinois cases, as well as in practically all instances where out-of-state divorce actions were enjoined, the power of the court was exercised to restrain residents of the injunction forum from fraudulently applying to a foreign jurisdiction where their residence is merely pretended for the purpose of procuring a divorce. (128 A. L. R. 1480; *McDonald v. McDonald,* 182 Misc. 1006, 52 N. Y. S. (2d) 385.)

With reference to the issue of a defendant's residence or domicile, the court in the *Kahn* case quoted from the *Royal League v. Kavanagh* case, *supra,* where the Supreme Court stated:

"The state has power to compel its own citizens to respect its laws even beyond its own territorial limits,

549

and the power of the court is undoubted to restrain one citizen from prosecuting in the court of a foreign state an action against another, which will result in a fraud or gross wrong or oppression.''

The court in the *Kahn* case further defined the limit of this power at p. 147:

''. . . where both parties are domiciled within the state, an injunction may issue to restrain one of them from instituting divorce proceedings in another state, but such an injunction will not be issued against a non-resident spouse.''

██ This interpretation is in accordance with concepts of law respecting *"in personam,"* and *"in rem"* proceedings. Therefore, an injunction should not be granted in local divorce proceedings against a former resident who has established a bona fide residence in another state, since his right to have his marital status adjudicated in the courts of his present domicile cannot be taken away in a proceeding *"in personam"* in another state. (27 C. J. S. 690; 128 A. L. R. 1480).

In the instant case, from the record before the court at the time the injunction was issued it was admitted that the parties owned, in joint tenancy, a home in Florida, built pursuant to an agreement ''to buy or build a suitable residence in such community as the parties may agree upon to be used as a home for them.'' It was also uncontroverted that the parties resided there from 1941 to 1944, and again in 1949; and that defendant continued to reside there himself all through 1949 up until plaintiff filed her suit for divorce in Illinois in May, 1950; and that defendant owned some 6,000 acres of land in Florida, valued at $8 an acre. Plaintiff's assertion that the parties were still residents of Illinois was not merely denied by defendant, but his counsel offered to prove by plaintiff's own testimony, and by her voter's registration certificate

that the parties were residents of Florida. The court, however, would not accept this evidence until defendant had filed an answer.

██ In the light of this evidence actually presented to the court, it is clear that defendant did not endeavor to establish a Florida residence for the purpose of instituting divorce proceedings, and that his residence there was bona fide and legitimately acquired, so that it could not be held, as in the *Russell* or *Kahn* cases, *supra,* that the out-of-state residence was established or threatened, and the proceedings therein instituted, in an effort to perpetrate a fraud, or grossly oppress a citizen of this State, which is the basis for granting injunctive relief in these cases.

██ Moreover, in determining whether defendant's conduct in instituting the divorce proceedings involved the perpetration of a fraud, it should be noted that it was not defendant who left the state to avoid pending divorce proceedings as did the defendants in the *Kahn* and *Russell* cases, but it was plaintiff, who had been residing with defendant in Florida, who left him shortly before he filed suit for divorce, and then did not commence her retaliatory action in Illinois until some 6 months later. Under the foregoing circumstances, the evidence was clearly insufficient to warrant the issuance of the injunction by the circuit court herein.

██ It is our opinion, further, that in view of the record before the court, it was error to grant the injunction without considering defendant's answer, or hearing further evidence on the vital issue of the residency of the parties.

██ On September 5, 1950, the court apparently recognized that the contentions and evidence were conflicting on the issue of the residency of the parties, which was material in determining whether an injunction should be allowed, and, therefore, continued the

551

cause for 24 hours to permit defendant to file an answer so that the court could properly hear further evidence on the issue of residency. It is not necessary to consider the propriety of requiring such an answer before deciding defendant's motion to strike the complaint, since, as hereinbefore noted, the court refused to even consider that answer, or any further evidence, upon being apprised of the Florida injunction.

██ The Illinois courts have held that it is error to grant a temporary injunction, or refuse to dissolve such an order, without considering the answer ·(*Moss v. Balch,* 320 Ill. App. 135), or without giving defendant an opportunity of denying the charges made (*Brandt v. International Brotherhood of Teamsters,* 304 Ill. App. 578).

In *Brandt v. International Brotherhood of Teamsters, supra,* the court held that where defendants had appeared by counsel in court for the purpose of interposing an objection to the issuance of a temporary injunction (as did the defendant in the instant case), they were entitled to at least as much consideration as plaintiff, who invoked the jurisdiction of the court for this extraordinary purpose. The court stated:

"Since defendants have indicated to the court orally, and by way of objection to the issuance of the temporary order, a denial of the alleged acts of violence . . . the court should, at least, have allowed them to introduce evidence in rebuttal of plaintiff's testimony."

██ It cannot be seriously contended, furthermore, that the fact that the Florida court issued an injunction against plaintiff herein justified the issuance of a retaliatory injunction in Illinois. This is not only the reverse of comity, but contrary to the circuit court's previous interpretation of the law herein. For, when the court below denied defendant's motion to dismiss

on the ground of the pendency of the prior suit in Florida, it held, in effect, that each court had power to proceed with the litigation until it was concluded. Therefore, if the pendency of defendant's previously instituted Florida suit was not a ground for abating plaintiff's subsequent Illinois action, the pendency of the Illinois action should not have precluded defendant from prosecuting his own action in Florida, where he had an equal right to seek an injunction, since the court there also had assumed and acknowledged jurisdiction of the parties. Hence, the issuance of such an injunction by the Florida court at the instance of defendant could not be deemed a manifestation of his bad faith or otherwise improper conduct.

 Nor can there be any inference of improper conduct by defendant from the fact that the cause was continued from September 5 to the morning of September 6, during which time the Florida injunction was entered, for the hearing was continued, not to await the entry of the Florida order, but to permit defendant to file an answer, which was not yet due, but which the court demanded before it would hear evidence on the controverted issue of the residency of the parties, which evidence defendant offered prior to the continuance.

On the basis of the foregoing analysis of this cause, it is our judgment that the circuit court erred in granting plaintiff's motion for a temporary injunction, and the order of the court enjoining defendant from further prosecuting his divorce proceeding pending in Florida, should properly be reversed.

*Judgment reversed.*