219 A.2d 126.

IN RE PETITION OF FRANCES ELIZABETH SMITH.
IN RE PETITION OF FRANCES ELIZABETH SMITH.
MORTON W. SMITH *vs.* FRANCES ELIZABETH SMITH.

APRIL 25, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

PAOLINO, J. This proceeding raises questions involving rights of visitation by the father of the minor child of these parties. The cause is properly before us on the father's appeal from a decree of the family court awarding custody

of the child to the mother and certain rights of visitation to the father.

At the outset, the cause being properly here on appeal, we deny and dismiss pro forma the father's bills of exceptions and his petition for certiorari. We also note that we do not discuss or consider any issue expressly waived and that reasons of appeal which are neither briefed nor argued are deemed to be waived. *Rhode Island Tool Co.* v. *Humphrey,* 98 R. I. 283, 201 A.2d 144.

The following facts are pertinent to the issues raised by this appeal. The parties, whom we shall refer to as the father and the mother, were married in 1954 and established their marital domicile in Virginia. A baby girl was born of this marriage. The husband and wife separated in September 1962 and the mother filed a petition for divorce in Virginia. A decree a mensa et thoro was entered by the Virginia court on February 27, 1963. The decree referred to a written agreement entered into between the parties in December 1962 and approved and confirmed the same after expressly stating that the court deemed such agreement to be fair, just and equitable. The pertinent provisions of the December 1962 agreement are contained in paragraphs numbered 1 and 6 thereof. Paragraph numbered 1 reads as follows:

> "From and after the date hereof, each party shall be entitled to live free from molestation, authority and control, direct or indirect, of the other, in the same manner as if unmarried, and each party hereto shall have all rights and privileges that each would otherwise have if not married to each other, including the right to reside in any place, engage in any occupation, employment and business, and to contract and be contracted with, without the consent of the other, in all respects as if unmarried."

With respect to custody of their minor child paragraph numbered 6 of the agreement states that:

> "The custody of the infant daughter of the parties

> \* \* \* shall remain with wife, with husband, at his cost, to visit said child and have said child visit with him at times and places that are reasonably proper, but such visitation privileges shall never be exercised when in doing so the orderly educational processes of such child will be disturbed."

A decree of absolute divorce was entered by the Virginia court on September 6, 1963, and immediately after the entry thereof the mother moved to Rhode Island where her family lived and where she and her minor daughter have resided ever since. The father married another woman on September 9, 1963 and continued to live in Virginia. The final decree entered by the Virginia court awarded custody of the child to the mother with rights of visitation by the father as set out in the December 1962 agreement.

On May 20, 1964 the father filed a petition in the Virginia proceedings praying for the clarification and amendment of the decree awarding custody of the child and fixing visitation privileges by the father. Thereafter the wife filed the instant petition in the family court pursuant to the provisions of G. L. 1956, §8-10-3, as amended, of the family court act. It is entitled "Petition For Custody" and in substance prays that the family court of this state determine the question of custody and rights of visitation and that it "impose and require such terms and conditions of custody in the event said minor is removed from this State as shall insure that jurisdiction of custody of said minor child shall continue in this Honorable Court." At the time this petition was filed the child was nine years of age.

We note that on July 11, 1964 the father filed a motion for temporary custody and that on September 1, 1964 he also filed an answer to the petition for custody, asking for complete custody of his daughter. However, in view of his waiver of his prayer for custody at the opening of the hearing in the family court, it is clear from the record that the

parties joined issue on the basic problem presented by this proceeding, namely, to determine what was for the best interest and welfare of a child of tender years. *Culpepper* v. *Martins*, 96 R. I. 328, 191 A.2d 285, 287. This was the primary question for the trial justice to resolve—all other questions were secondary and important only if they were germane to such primary question. The father's rights of visitation with his daughter were subject to the same standard.

After the hearing on the merits of the mother's petition was concluded the trial justice filed a written decision in which he carefully examined and reviewed the evidence presented by the parties. Thereafter on April 26, 1965 he entered a decree predicated on his decision. The decree awards the custody of the child to the mother and grants the father rights of visitation at stated times and subject to specific conditions. Paragraph numbered 1, subpar. d, provides: "The foregoing provisions for visitation shall be and remain in full force and effect until the 31st day of December, A. D. 1966, and the rights of visitation thereafter shall be subject to further consideration by this Court, for which purpose, and for the purpose of enforcing this decree, this Court hereby retains jurisdiction of the parties and of said minor child * * *." We note in passing that counsel for the father stated at the hearing in this court that he was not challenging that portion of the decree stating that the court was retaining jurisdiction of the parties and of the minor child.

Paragraph numbered 2 of the decree provides in part: "The exercise of rights of visitation hereunder are subject to the conditions precedent that the respondent post a cash bond of five thousand dollars ($5,000.00) with the registry of the Family Court, which said sum shall be payable to the petitioner upon any willful breach of the conditions and terms of visitation hereinbefore set forth * * *." In

addition to the foregoing provisions the decree contains certain other orders which we shall discuss in considering the father's reasons of appeal.

Although he has filed eighteen reasons of appeal, he has briefed and argued his appeal under three main points contending in substance that certain portions of the decree are against the law and the evidence and the weight thereof.

We have already disposed of the question raised by the father with respect to the proper appellate procedure. The cause is properly before us by appeal and this is so whether we treat this proceeding as an appeal under the practice followed in this state for many years, see *Ward* v. *Ward,* 48 R. I. 60, and *Culpepper* v. *Martins, supra,* or whether we treat it as an appeal under the provisions of P. L. 1965, chap. 55, sec. 59, which was approved on May 3, 1965 and which provided that the pertinent portions thereof were to take effect on January 10, 1966. Chapter 55 is the statute providing for the simplification of practice and procedure in the superior court and in the district courts. Section 59 of the act relates, in part, to appeals from the family court to this court.

Under point II the father contends that we should reverse that portion of the decree which provides "that respondent shall cause to be dismissed the petition for clarification and enlargement of custody and visitation rights filed by him and now pending in the Circuit Court of Loudoun County, Virginia, in the proceeding entitled 'Frances Elizabeth Smith, Complainant v. Morton W. Smith, in Chancery No. 2590.' " This provision was included in the decree by the trial justice as a condition precedent to the exercise of the rights of visitation granted to the father. As we understand his argument, the father does not question the power of the family court of this state to impose such condition, but rather he contends that in exercising such power in this case the trial justice acted arbitrarily and abused his discretion because the condition in question

was not warranted or supported by the evidence. We find no abuse of discretion and no error in the portion of the decree challenged under this point.

The parties have briefed and argued the issue thoroughly and they have cited an abundance of cases and authorities which discuss the problem. It would unduly prolong our decision were we to comment on the cases and authorities cited, and indeed we do not believe it is necessary or useful to do so because the law on this subject is generally well established.

The difficulty arises in the application of well-defined principles of law to specific cases. Jurisdiction of the family court of the parties and the subject matter of this controversy is conceded, as is the power of such court to impose the condition in question. See *Borda* v. *Borda*, 44 R. I. 337; also *Chafee* v. *Quidnick Co.*, 13 R. I. 442. The narrow question presented for our determination is whether, in the peculiar circumstances of this case, there has been an abuse of discretion. It presents no question involving art. IV, sec. 1, the full faith and credit clause of the constitution of the United States.

It appears from the transcript and from the decision of the trial justice that in considering this petition he did not lose sight of the basic problem presented for his determination, the welfare and best interests of the child. It is clear from the record that he was convinced that the marital difficulties between the parents and the resulting problems relating to the child's custody and to her father's rights of visitation affected their child of tender years adversely, a child who loved and was loved by both parents. On the basis of the evidence before him, it was his judgment that the dismissal of the Virginia petition would be for the best interests and welfare of the child, but he expressly provided that the visitation provisions were to remain in full force and effect only until December 31, 1966, and that "the rights of visitation thereafter shall be subject to further

consideration by this Court, for which purpose, and for the purpose of enforcing this decree, this Court hereby retains jurisdiction of the parties and of said minor child, and hereby continues this proceeding, without assignment, for further hearing."

After carefully examining the transcript and the decision upon which the decree is predicated it is our judgment that the trial justice did not abuse his discretion in imposing the condition in question and that the portion of the decree incorporating such condition is supported by the evidence. We have intentionally omitted specific references to the testimony because we believe that to do otherwise would serve no useful purpose.

Paragraph numbered 1, subpar. c, of the decree provides in part that: "During such visitation, respondent may take said minor child on trips to any suitable place he sees fit in the United States, or elsewhere; provided however, respondent is hereby restrained and enjoined from taking said minor child to or within the Commonwealth of Virginia, and, further, from having said minor child in the presence and company of his present wife and/or of her children by her former marriages."

Under point III of his brief the father contends in substance that the provision is not supported by adequate findings of fact; that such findings as the trial justice did actually make were clearly wrong; that he misconceived the evidence; and that in imposing these conditions he abused his discretion. In our judgment there is no merit in any of these contentions.

As we said in discussing point II of the father's brief, we do not believe it will serve any useful purpose to review here the evidence in detail. Suffice it to say that after carefully examining the pertinent testimony, we believe and we hold that the trial justice was warranted by the evidence in imposing these conditions, that he made pertinent findings supported by competent evidence, and that we have

not been persuaded that he misconceived any material evidence in connection with these conditions.

We need only note his findings that in view of the child's manifest affection for her father he should have more extensive rights of visitation than had theretofore been allowed. The trial justice expressly found that the welfare of the child would be served thereby, but he also found that at this time in her life, association with the father's present wife would not serve the best interests and welfare of the child. Without going into unnecessary details on this phase of the evidence, we are satisfied that such finding is supported by competent evidence and requires no further discussion except to say that in our judgment the pertinent findings are not clearly wrong and hence will not be disturbed by this court. *Boger* v. *Boger*, 87 R. I. 172.

Paragraph numbered 1, subpar. c, of the decree also provides that the father's "right to visitation outside of the State of Rhode Island as hereinbefore provided in subparagraph a) shall be subject to the condition that said minor child be accompanied by a suitable governess selected by the petitioner, but employed at the expense of respondent, to take care of said minor child's needs in accordance with her station in life."

The substance of the father's objection to this provision is that the presence of a governess was not necessary, would interfere with his enjoyment of visiting with his daughter, and was ill-advised from the point of view of the welfare of the child. The trial justice was careful to point out in his decision that he was imposing this condition, not for the purpose of providing a governess who was to interfere as a "watchdog," but to take care of the child's needs in accordance with her station in life. The father's financial ability to comply with this condition is not an issue. The trial justice had the advantage, which we do not have, of observing the parties as they testified and making value judgments on this very issue. He was in a better position

than we are of judging whether, in the totality of circumstances involved in this cause, the assistance of a governess was for the best interests and welfare of the child.

In our judgment there is implicit in his order a finding that the provision for a governess was for the best interests of the child. His findings carry great weight with us and will not be disturbed unless they are clearly wrong. The father has failed to persuade us that the trial justice was clearly wrong or that the imposition of this condition was so arbitrary as to constitute an abuse of discretion.

We have considered every issue presented by the father, whether or not expressly referred to in this opinion. Likewise we note that we have examined the entire transcript and all the exhibits, but have refrained from discussing the evidence in detail because we do not believe it to be necessary in the ultimate determination of this appeal.

The respondent father's bills of exceptions and his petition for certiorari are denied and dismissed pro forma. His appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the family court.

ROBERTS, C. J., concurs in the result.

JOSLIN, J., concurring and dissenting. I concur in part and dissent in part. In my judgment the court below erred when it enjoined the father from taking his child into Virginia and when it required that he discontinue his pending suit in that state as a condition precedent to seeing or visiting with his child.

The divorce decree which terminated the marriage of the parties was entered by the circuit court in Loudoun county, Virginia, on September 6, 1963. The custody of the minor daughter was awarded to the mother and the father was permitted to visit and to have her with him at reasonably proper times and places. When the father met with difficulties in advantaging himself of these visitation rights, he commenced proceedings in Virginia on May 20, 1964 in

order to clarify and amend them. Section 20-108 of the Virginia Code (1950) specifically conferred upon the courts of that state jurisdiction of his petition even though a final decree of divorce had already been entered and notwithstanding that both the mother and the child had immediately following its entry departed from the commonwealth and had become resident and domiciled in Rhode Island. *Kern* v. *Lindsey*, 182 Va. 775. Virginia follows what is generally the rule elsewhere. *Hersey* v. *Hersey*, 271 Mass. 545; *Hatch* v. *Hatch*, 15 N.J. Misc. 461; *White* v. *Shalit*, 136 Me. 65.

Eight days after the filing of the father's petition in Virginia the mother commenced these proceedings. She alleged that the Virginia court was without jurisdiction to act on the father's pending petition, that those proceedings were "vexatious and harassing" and that they might "result in conflicting decrees concerning the custody" of the child; she asked the family court to determine the custody of the child and in addition to "impose and require such terms and conditions of custody in the event said minor is removed from this State as shall insure that jurisdiction of custody of said minor child shall continue in this Honorable Court."

There can, of course, be no doubt that our courts have the power to require that the father discontinue the proceedings brought by him in Virginia as a condition precedent either to visiting or having his daughter with him. When the father appeared in the family court proceedings he subjected himself to its process and its imposition of the condition of discontinuance, a condition which in substance enjoins the prosecution of his petition in the courts of Virginia, constituted an exercise of that court's in personam jurisdiction over him. The question before this court, however, is not of the family court's power, but of the propriety of its exercise.

Although an injunction against proceeding in a sister state is a restraint directed against a litigant and not against

the court of the foreign jurisdiction, *O'Loughlin* v. *O'Loughlin*, 6 N. J. 170, 178, it nonetheless raises an issue of comity, and whether to exercise the jurisdiction poses a problem of great delicacy, *Collins* v. *Collins*, 219 S. C. 1, because if exercised it may and frequently does lead to a conflict of jurisdiction. *Kahn* v. *Kahn*, 325 Ill. App. 137.

It is for these reasons that the issuance of such an injunction is regarded as an extraordinary remedy which should be sparingly and reluctantly granted, *Kleinschmidt* v. *Kleinschmidt*, 343 Ill. App. 539, and only when the circumstances are special and the pressing need is to prevent by way of illustration either a manifest wrong and a grave injustice, *Royal League* v. *Kavanagh*, 233 Ill. 175, or an evasion of some policy of the forum state, *John Hancock Mut. Life Ins. Co.* v. *Fiorilla*, 83 N. J. Super. 151, or the vexation, harassment and oppression sometimes incident to multiple litigation. *Trustees of Princeton University* v. *Trust Co. of N. J.*, 22 N. J. 587. The prerequisite overriding equitable considerations are seldom found if the proceedings to be restrained are already pending in a foreign court which has jurisdiction over the issues, *Carson* v. *Dunham*, 149 Mass. 52, or if the basis upon which the request for injunctive relief rests is either to convenience the moving party by having the matter adjudicated in his own courts, or to relieve his distrust of the courts of a sister state. *Kleinschmidt* v. *Kleinschmidt*, supra.

The guiding principles are succinctly stated in *Arpels* v. *Arpels*, 8 N.Y.2d 339, 341: "The use of injunctive power to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed, for its exercise represents a challenge, albeit an indirect one, to the dignity and authority of that tribunal. Accordingly, an injunction will be granted only if there is danger of fraud or gross wrong being perpetrated on the foreign court."

When I test this record and the opinion of the majority

by these guiding principles I can find nothing which indicates that manifest wrong and grave injustice will occur, or that some policy of this state will be evaded, or that the mother will be vexed or harassed if the father is allowed to continue his prior suit in Virginia, nor can I discover any semblance of evidence, direct or inferential, which reasonably points to the conclusion that any further prosecution of the father's petition in the courts of Virginia will adversely affect the welfare and well-being of the child. If the majority could tie their opinion to any one of these facets, I would, of course, agree with them. I dissent, however, because in this record I can find nothing which justifies the imposition of a restraint on the foreign proceeding.

What the majority condones is a decree which makes the right of the daughter to be with her father contingent upon the discontinuance of his Virginia petition. They do this notwithstanding the trial justice's statement in his written decision that the daughter has a "manifest affection for her father." The order they affirm, although in form a restraint upon the father, in substance affronts the Virginia court whose jurisdiction had already vested when these proceedings were commenced, and evidences, at least implicitly, their belief that the courts of this state are more zealous and better able to look to the welfare and well-being of the child than are the Virginia courts. I am unwilling to join in that affront nor do I share that belief. In my judgment the trial justice abused his discretion when he imposed a condition of discontinuance which, although it may serve the convenience of the mother, violates the rule of comity.

It is also my opinion that the portion of the decree which permits the father to take the child "on trips to any suitable place he sees fit in the United States, or elsewhere; provided however, respondent is hereby restrained and enjoined from taking said minor child to or within the Common-

wealth of Virginia," stands on no firmer footing than does the imposition of the condition precedent. A search of the record and of the majority's opinion fails to disclose any facts upon which that order may justifiably rest, and in the absence of any such basis it is obvious that an order which permits the father to take his daughter anywhere in the world save for the Commonwealth of Virginia, is purposed solely upon preventing the courts of Virginia from acting in the premises. To impose a restraint for that purpose is to use power arbitrarily and wilfully and without regard to what is either right or equitable or for the best interests of the child under the circumstances. Power so used is abused and should not be countenanced.

While I would affirm the decree appealed from, I would strike from it the condition precedent of discontinuance and the injunction against taking the child into the Commonwealth of Virginia.

*Moore, Virgadamo, Boyle & Lynch, Cornelius C. Moore, Salvator L. Virgadamo, Francis J. Boyle, Jeremiah C. Lynch, Jr.*, for Frances Elizabeth Smith.

*Edwards & Angell, Gerald W. Harrington*, for Morton W. Smith.